IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                      No. CR 10-1761 JB

WILLIS YAZZIE,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Letter from Willis J. Yazzie to the Court (dated November 8, 2010), received November 12, 2010, filed November 12, 2010 (Doc. 25); and (ii) the Defendant's Motion to Dismiss Attorney, filed November 15, 2010 (Doc. 26).  The Court held a hearing on December 16, 2010.  The primary issue is whether the Court should replace Defendant Willis Yazzie's current attorney, James Loonam, because Mr. Loonam will not a file a motion to suppress and for other, apparently related reasons.  Because Yazzie represented that he has no objection to the Court denying his motion at this time without prejudice to his renewing the motion, the Court will deny his request.

**FACTUAL BACKGROUND**

According to the affidavit of FBI Special Agent Dustin Grant accompanying the Complaint, Yazzie is accused of sexually abusing two of his step daughters.  The abuse is alleged to have occurred at his home in Two Grey Hills, New Mexico, where Yazzie lives with Margaret Harjo, the mother of the alleged victims.  Yazzie and Harjo have four children who live with them, including the two alleged victims, in an eight-foot-by-eight-foot shack that has no running water or electricity.

They have been living in the shack since 2008. The children are thirteen, ten, eight, and two years of age, and the oldest two children are the alleged victims. The alleged victims stay in school dorms during the week and return home on the weekends. The alleged sexual abuse occurred over a period of approximately two years when Yazzie's step daughters were home from boarding school on the weekends.

One of the alleged victims allegedly told Harjo about Yazzie's sexual abuse, but Harjo told the victim it was the victim's fault for being "boy crazy." After Hargo's children were removed in April 2010, Yazzie allegedly confessed to Hargo that he had been abusing one of the victims for approximately two years. Yazzie also allegedly confessed to investigators that he touched both victims, including placing his penis on one girl's face on at least three separate occasions and inserting his finger into the other girl's vagina.

## PROCEDURAL BACKGROUND

On May 12, 2010, a Complaint was filed against Yazzie for committing multiple acts of aggravated sexual abuse on two minor children under the ages of twelve and sixteen years in violation of Title 18 U.S.C. §§ 2241(c) and 2246(2)(C), (D). See Doc. 1. On June 10, 2010, a grand jury indicted Yazzie on two counts of knowingly engaging in a sexual acts with the two alleged victims in violation of 18 U.S.C. §§ 1153, 2241(c) and 2246(2)(C), (D). On May 12, 2010, Federal Public Defender Mr. Loonam was appointed to represent Yazzie.

Yazzie, proceeding pro se, moves to dismiss Mr. Loonam as counsel. Yazzie states that he can no longer work with Mr. Loonam and that the attorney/client relationship is severed because of his lack of trust in Mr. Loonam. Yazzie prays that the Court dismiss Mr. Loonam and appoint other counsel to represent him.

In his letter to the Court, Yazzie states that he would like a new attorney because Mr.

Loonam will not file a motion to suppress. Yazzie states that he thinks he was setup and that he did the wrong thing by saying he did the crime. Yazzie states that, at the time of his statements, he thought that "they" would investigate the children's biological father, "but they did not do their job," and Yazzie contends that the girls are still in danger. Yazzie attaches to his letter a letter from his girlfriend "about what she thinks."

In the girlfriend's letter, she states that she is "starting find out things that are not true about" Yazzie.

> Like when you said you don't have chlyamdia (STD) That's true, because I got tested last night at the hospital. I don't have it. So when they said you probably gave Rachel STD, but how can you when you don't have it. I remember us taking medicine for it back in January of 2008 after Hotulka was born, once you take the medicine it should go away. So you are probably right about [the biological father], cause Rachel stayed with her dad most of the time.
>
> And also I tryed asking him about when or if he ever went in to get tested, he just says he too busy or he doesn't have time, so that right there tells me that he covering up for something, because just two days ago he got visitation rights to see the kids, and I didn't even know about it, until Cassandra told me. So all this time, he was probably planning all of this just to get my kids away from me, so that he can have the kids. Now I'm finally seeing the whole picture of what he's trying to do. He probably talk or said something to the girls, to blame you for something that he did. Like you said, buying them stuff or giving them money.
>
> Now he's probably thinking that everything going his way, but I got something up my sleeve. Oh yeah I maybe sick but I'm not in the ground yet. So just hang in there. I'm going to ask for my test results Monday, but I tryed [sic] talking to your lawyer last time I was there back in July, when me & Cassandra was explainin how Angel is and what her dad did to her when she was baby. But he kinda of didn't believe us, he just said there just can't be nothing going on, there gotta be something. So that's the kind of attitude he has, but I'll try to talk to him again once I get my papers to show him that you didn't do what they said you did.

Letter from Margaret Harjo to Willis Yazzie at 2-3 (dated August 7, 2010), filed November 12, 2010 (Doc. 25).

When the Court's Deputy Courtroom Clerk asked Mr. Loonam what his position is on this

matter and what he wanted to do, Mr. Loonam stated that the parties needed a hearing so Yazzie could articulate his position. At the December 16, 2010 hearing, the Court met with Yazzie and Mr. Loonam outside the presence of the United States. Yazzie represented that, after conferring with his Mr. Loonam, he agrees to having the Court deny his request at this time without prejudice to his renewing the request. Mr. Loonam assured the Court that filing a motion to suppress remains a possibility, and he may seek to have the alleged victims' biological father investigated.

## **RELEVANT LAW REGARDING APPOINTMENT OF NEW COUNSEL**

To warrant substitution of counsel, a defendant must show good cause, such as "a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict which leads to an apparently unjust verdict." United States v. Beers, 189 F.3d 1297, 1302 (10th Cir. 1999). "Good cause for substitution of counsel consists of more than a mere strategic disagreement between a defendant and his attorney; rather, there must be a total breakdown in communications." United States v. Stewart, 378 F. App'x 773, 777 (10th Cir. 2010). To prove a total breakdown in communication, a defendant must point to evidence of a severe and pervasive conflict with his attorney or evidence of minimal contact with his attorney -- such that meaningful communication is not possible. See United States v. Stewart, 378 F. App'x at 777. The United States Court of Appeals for the Tenth Circuit has stated that, in assessing whether to grant a motion to substitute counsel, a court should consider: (i) whether the defendant's request was timely; (ii) whether the trial court adequately inquired into defendant's reasons for making the request; (iii) whether the defendant-attorney conflict was so great that it led to a total lack of communications precluding an adequate defense; and (iv) whether the defendant substantially and unreasonably contributed to the communication breakdown. See United States v. Porter, 405 F.3d 1136, 1140 (10th Cir. 2005). Courts balance these factors when determining whether to grant substitution of counsel. See United

States v. Lott, 433 F.3d 718, 725 (10th Cir. 2006)(weighing the four factors, and determining that, although the first factor weighs in favor of granting the defendant's motion for substitute counsel, the remaining three factors weigh against granting his motion).

### **ANALYSIS**

The Court will deny Yazzie's request that it appoint new counsel without prejudice to him renewing the motion, because Yazzie consents to denying his motion at this time. Moreover, the Court finds that Yazzie has not shown that there is an irreconcilable conflict between himself and Mr. Loonam, or that there is a total lack of communication, precluding his adequate defense. To warrant substitution of counsel, a defendant must show good cause, such as "a conflict of interest, a complete breakdown of communication, or an irreconcilable conflict which leads to an apparently unjust verdict." United States v. Beers, 189 F.3d at 1302.

After carefully considering the circumstances of Yazzie's request, it does not appear that a motion to suppress is warranted at this time. Pre-trial negotiations between Yazzie and the United States are on-going, and a motion to suppress may not be necessary at this time. In any case, the issue of a possible motion to suppress does not warrant replacing Mr. Loonam.

As to Yazzie's innocence and that someone else molested one of the girls, Mr. Loonam is pursuing that possibility. Yazzie offering evidence of his innocence, however, may be undercut considerably by the statements he made to Harjo and to investigators that may constitute a confession. Moreover, if the biological father is sexually abusing one of the girls, that would not preclude the girl from being abused by Yazzie, too. In any case, Mr. Loonam seems to be professionally and competently proceeding with his investigation to see if he can help Yazzie, and there does not appear to be a sound reason in law or in the circumstances of this case to replace him.

While Yazzie represents, and the Court believes, that the Court should not remove Mr.

Loonam at this time and on this record, the case remains at a relatively early stage of discovery. If Yazzie believes he is justified in renewing his request to remove Mr. Loonam as the case proceeds, he can approach the Court and renew his request for new counsel. On the present record, however, Mr. Loonam appears to be doing his best to represent Yazzie in a professional manner.

**IT IS ORDERED** that the requests in the Letter from Willis J. Yazzie to the Court and the Defendant's Motion to Dismiss Attorney that the Court replace his current counsel are denied without prejudice to him renewing his request for new counsel if he remains unhappy with Mr. James Loonam.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Jennifer M. Rozzoni
  Assistant United States Attorney
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

James C. Loonam
  Assistant Federal Public Defender
Albuquerque, New Mexico

    *Attorney for the Defendant*