IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                          No. CR 10-1761 JB

WILLIS YAZZIE,

      Defendant.

<u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on: (i) the Defendant's Motion to Withdraw Plea of Guilty, filed November 29, 2011 (Doc. 59)("1st Motion"); and (ii) the Defendant's Motion to Withdraw Plea of Guilty, filed April 4, 2012 (Doc. 64)("2nd Motion"). The Court held a hearing on February 4, 2013. The primary issue is whether Defendant Willis Yazzie has given the Court a fair and just reason to allow him to withdraw his guilty plea. The Court has weighed the seven factors the United States Court of Appeals for the Tenth Circuit requires the Court to consider when determining whether to allow a defendant to withdraw a guilty plea, and the Court determines that Yazzie has not given the Court a fair and just reason for permitting him to withdraw his plea. The Court, therefore, denies the 1st Motion and 2nd Motion.

<u>FACTUAL BACKGROUND</u>

Yazzie is charged with Aggravated Sexual Abuse, in violation of 18 U.S.C. §§ 1153, 2241(a), and 2246(2)(C). <u>See</u> Information at 1, filed February 9, 2011 (Doc. 35). Yazzie lived in an "eight-foot-by-eight-foot shack" in Two Grey Hills, New Mexico, with his wife and their four children, two of which were Jane Doe 1 and Jane Doe 2, Yazzie's step-daughters. United States' Response to Defendant's Motion Withdraw [sic] His Plea of Guilty at 1, filed December 30, 2011 (Doc. 62)("Response")(citation omitted). The Navajo Tribal Police Department learned

that Yazzie was allegedly abusing Jane Doe 1, who was thirteen years old at the time, and Jane Doe 2, who was then ten years old, on May 3, 2010.  See Response at 1.  On May 10, 2010, the Navajo Policy interviewed Yazzie regarding the allegations.  Before the interview, Yazzie gave an oral and written waiver of his rights under Miranda v. Arizona, 384 U.S. 436 (1966).[1]  Yazzie admitted that he had an intimate relationship with Jane Doe 1, which involved him kissing Jane Doe 1, holding hands with her, putting his penis on her cheek, and telling her to suck it, which she would not, and touching her vagina, both over her clothes and under clothes, including penetration with his finger.  Yazzie denies ever having intercourse with Jane Doe 1.  See Response at 1-2.  Yazzie admitted that he touched Jane Doe 2's vagina one night, but contends that he thought it was his wife's, and not Jane Doe 2's, which he was touching.  He denies having intercourse with Jane Doe 2.  See Response at 2.

## PROCEDURAL BACKGROUND

Yazzie initially pled not guilty to the two counts in the Indictment, filed June 10, 2010 (Doc. 12), charging him with aggravated sexual abuse of Jane Doe 1 and Jane Doe 2.  See

---

[1] Miranda v. Arizona "requires that procedural safeguards be administered to a criminal suspect prior to 'custodial interrogation.'" United States v. Perdue, 8 F.3d 1455, 1463 (10th Cir. 1993)(quoting Miranda v. Arizona, 384 U.S. at 444). The Supreme Court provided the substance of the warning that must be given to a defendant to meet these procedural safeguard requirements:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.  The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently.  If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.

Miranda v. Arizona, 384 U.S. at 444-45.

Clerk's Minutes of Arraignment at 1, filed June 16, 201 (Doc. 14).  On February 9, 2011, Yazzie

agreed to plead guilty to an Information, charging a violation of 18 U.S.C. § 2241(a), that being

Aggravated Sexual Abuse of Jane Doe 1.  See Plea Agreement, filed February 9, 2011 (Doc. 38).

The United States and Yazzie made an agreement to a specific sentence between fifteen and

nineteen years imprisonment, pursuant to rule 11(c)(1)(c) of the Federal Rules of Criminal

Procedure.  See Plea Agreement ¶ 10(a), at 4.  In the Plea Agreement, in the section titled

"Defendant's Admission of Facts," the statement from Yazzie reads, in part:

> Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of
> entering this plea, the United States could prove facts sufficient to establish my
> guilt of the offense to which I am pleading guilty beyond a reasonable doubt.  I
> specifically admit the following facts related to the charges against me, and
> declare under penalty of perjury that all of these facts are true and correct:
>
> . . .
>
> **During March of 2010, I, Willis Yazzie, inserted my finger into
> the vaginal opening of my stepdaughter, A.N., a/k/a Jane Doe.
> A.N. was 13 years old at the time.  In doing so, I used force
> against A.N.**

Plea Agreement ¶ 8, at 3 (emphasis in original).  Yazzie also stipulated that:

> [T]he Defendant agrees that, upon the Defendant's signing of this plea agreement,
> the facts that the Defendant has admitted under this plea agreement as set forth
> above, as well as any facts to which the Defendant admits in open court at the
> Defendant's plea hearing, shall be admissible against the Defendant under Federal
> Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a
> criminal trial, and the Defendant expressly waives the Defendant's rights under
> Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with
> regard to the facts the Defendant admits in conjunction with this plea agreement.

Plea Agreement ¶ 10(c), at 5.

At the plea hearing, Yazzie swore that the testimony he gave was the "truth, the whole

truth, and nothing but the truth."   Federal Tape Recorder at 12:05:45-05:58 (Sanchez,

Yazzie)("FTR").   Yazzie responded "no" to the Honorable Richard L. Puglisi, former Chief

United States' Magistrate Judge's questions whether Yazzie had been recently treated for any mental illness or addiction to narcotic drugs, and whether Yazzie was under the influence of alcohol or drugs of any kind.  See FTR at 12:06:20-06:35.  Yazzie responded "yes" to Judge Puglisi's question whether Yazzie was satisfied "in all respects with his attorney Mr. Loonam." FTR at 12:06:40-06:44 (Judge Puglisi, Yazzie).  Yazzie affirmed that he had read the Consent to Proceed Before United States Magistrate Judge in a Felony Case, filed February 9, 2011 (Doc. 37), the Waiver of Indictment, filed February 9, 2011 (Doc. 36), and the Plea Agreement, and Yazzie stated that he had also reviewed the documents with his counsel.  See FTR at 12:06:48-07:21 (Judge Puglisi, Yazzie).  Yazzie stated that he did not have any questions about those documents.  See FTR at 12:07:22-07:27 (Judge Puglisi, Yazzie).  Yazzie stated that he understood the information in those documents.  See FTR at 12:07:28-07:35 (Judge Puglisi, Yazzie).  Yazzie affirmed that he had signed the documents.  See FTR at 12:07:36-07:41 (Judge Puglisi, Yazzie).  Yazzie affirmed that he understood that, by signing the Consent to Proceed Before United States Magistrate Judge in a Felony Case, he had given up right to have the District Judge receive his plea.  See FTR at 12:07:42-07:51 (Judge Puglisi, Yazzie).  Yazzie stated that he understood that, by signing the Waiver of Indictment, he had given up his right to have a grand jury indict him before he pled.  See FTR at 12:07:52-08:07 (Judge Puglisi, Yazzie).  On the basis of Yazzie's statements, Judge Puglisi approved the Consent to Proceed before United States Magistrate Judge in a Felony Case and the Waiver of Indictment, finding that Yazzie had "full knowledge" of their meaning and effect.  FTR at 12:08:08-08:21 (Judge Puglisi).

Assistant Federal Public Defender James C. Loonam, Yazzie's counsel at the time, stated that he was convinced that Yazzie understood the rights he gives up by pleading guilty and his

likely sentence under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.  See FTR at 12:08:22-08:53 (Judge Puglisi, Loonam).  When Judge Puglisi asked Yazzie whether the Plea Agreement is his only agreement with the United States, Yazzie stated that he wants "another agreement."  FTR at 12:08:54-09:06 (Judge Puglisi, Yazzie).  Mr. Loonam informed Judge Puglisi that, while Yazzie was detained pretrial, his wife gave birth to Yazzie's child, and Yazzie wants an agreement that will allow him to see his baby in person, in the presence of United States Marshalls.  See FTR at 12:09:31-10:11 (Loonam).  Judge Puglisi asked Yazzie whether he understood that the only agreement that was binding at the time of the plea hearing was the Plea Agreement, and Yazzie responded: "Yes."  FTR at 12:10:15-12:10:33 (Judge Puglisi, Yazzie).  Yazzie responded "no" to Judge Puglisi's question whether anybody had attempted to force him to plead guilty, in any way, and Yazzie responded "yes" to Judge Puglisi's question whether he was pleading guilty because he is "in fact guilty."  FTR at 12:10:34-12:10:45 (Judge Puglisi, Yazzie).

Judge Puglisi stated that he would not read through the Plea Agreement word-for-word at the plea hearing with Yazzie, because Yazzie indicated that he understood the Plea Agreement.  Judge Puglisi stated that he would, rather, ask Yazzie questions on particular parts of the Plea Agreement to assure that Yazzie understood it.  See FTR at 12:10:46-12:11:03 (Judge Puglisi).  Judge Puglisi asked Yazzie whether he could affirm that his statement in the Plea Agreement is true.  See FTR at 12:11:03-12:11:34 (Judge Puglisi)(citing Plea Agreement at 3-4).  Yazzie stated that his statement in the Plea Agreement is "not all true," and that he had tried everything he could to change it, but could not change the statement, and, therefore, he would "have to say it's true."  FTR at 12:11:42-11:51 (Yazzie).  Judge Puglisi informed Yazzie that he does not have to say that his statement is true.  See FTR at 12:11:52-11:54 (Judge Puglisi).  Judge Puglisi asked

Yazzie which portion of his statement in the Plea Agreement is not true.  <u>See</u> FTR at 12:11:54-12:11:12:06 (Judge Puglisi).  Yazzie responded that the statement inaccurately indicates that he used "force" on Jane Doe 1.  FTR at 12:12:06-12:09 (Yazzie).  Judge Puglisi asked Yazzie why it is not true that Yazzie used "force," and Yazzie stated that he did not use force and that, rather, Jane Doe 1 kept "coming to" him.  FTR at 12:12:10-12:21 (Judge Puglisi, Yazzie).  Judge Puglisi asked whether everything in his statement, besides the allegation of force, is true, and Yazzie responded: "Yes."  FTR at 12:12:22-12:34 (Judge Puglisi, Yazzie).  Judge Puglisi noted that both the Information and the Plea Agreement state that Yazzie used "force," but also noted that a child of Jane Doe 1's age at the time -- thirteen -- cannot consent to sexual contact, so Judge Puglisi expressed that he is not certain whether Yazzie must admit to using force.  FTR at 12:12:34-12:13:52 (Judge Puglisi).  Judge Puglisi asked the United States whether Yazzie is required to admit that he used force to be found guilty of aggravated sexual abuse of a minor.  <u>See</u> FTR at 12:13:52-12:14:03 (Judge Puglisi).  The United States responded that the second element of the charge against Yazzie is that he used force, and, therefore, Yazzie must admit to using force to plead guilty to the Information.  <u>See</u> FTR at 12:14:04-12:14:14 (Henderson).

Judge Puglisi then asked Yazzie whether, in light of the United States' evidence against him, Yazzie believes it is "more probable than not" that a jury would find that he used force to commit a sexual act with Jane Doe 1, regardless whether Yazzie believes that Jane Doe 1 consented to the act.  <u>See</u> FTR at 12:14:22-15:06 (Judge Puglisi).  Yazzie conferred with Mr. Loonam and stated that, based on his conversation with Mr. Loonam, he understood that a jury would find he had used force on Jane Doe 1, because "of the age of the victim."  FTR at 12:15:20-15:42 (Yazzie, Judge Puglisi).  Judge Puglisi asked Yazzie: "Even though you feel that there wasn't force used, after you have looked at all the evidence in the case is it your belief that

a jury would not believe you and find that you did use force?"  FTR at 12:15:45-16:02 (Judge Puglisi).   Yazzie responded: "Yes."   FTR at 12:16:02-16:04 (Yazzie).   Judge Puglisi then announced that, after reviewing Yazzie's statement in the Plea Agreement, he found the facts provide an adequate foundation to the Information charging Yazzie with aggravated sexual abuse.  See FTR at 12:17:05-28 (Judge Puglisi).  The United States did not request that Judge Puglisi question Yazzie further regarding the crime.  See FTR at 12:16:29-16:31 (Judge Puglisi, Henderson).

Judge Puglisi then asked Yazzie whether he understood that he has agreed to a sentence between fifteen years and nineteen years, and that, if Judge Puglisi accepts his plea, Yazzie will receive a sentence of imprisonment in that range.  See FTR at 12:16:32-17:08 (Judge Puglisi). Yazzie responded: "Yes."  FTR at 12:17:08-17:09 (Yazzie).  Judge Puglisi asked Yazzie whether he understood that he can withdraw from the Plea Agreement if the Court rejects the Plea Agreement, and Yazzie responded that he does.  See FTR at 12:17:10-17:27 (Judge Puglisi, Yazzie).  Judge Puglisi asked Yazzie: "Are you sure you want to agree to a sentence that is in the range that I just mentioned to you?"  FTR at 12:17:28-17:38 (Judge Puglisi).  Yazzie stated that the sentence is "too much for me," and that he "tried to get it lower," but could not, and, therefore, "yes," he accepted the agreed sentencing range.  FTR at 12:17:39-52 (Yazzie).  Judge Puglisi asked Yazzie whether he "still want[s] to proceed with this plea?"  FTR at 12:17:53-56 (Judge Puglisi).  Yazzie replied: "Yes."  FTR at 12:17:56 (Yazzie).  Judge Puglisi asked Yazzie whether he understood that, if Judge Puglisi accepts the plea, Yazzie will be required to register as a sex offender, and Yazzie replied: "Yes."  FTR at 12:17:57-18:08 (Judge Puglisi, Yazzie). Yazzie affirmed that he had discussed with Mr. Loonam, in detail, the requirement for registration as a sex offender.  See FTR at 12:18:09-18:21 (Judge Puglisi, Yazzie).

- 7 -

Judge Puglisi asked Yazzie whether he understood that, in the Plea Agreement, he has waived the right to appeal any sentence up to the maximum allowed by law, which Judge Puglisi notes the Plea Agreement states is a sentence of up to life imprisonment.  See FTR at 12:18:22-18:58 (Judge Puglisi).   Yazzie responded: "Yes."  FTR at 12:18:59-19:00 (Yazzie).   Judge Puglisi asked whether Yazzie understood that, if the Court rejects the Plea Agreement, Yazzie may be subject to the maximum statutory penalty and not to the agreed sentencing range in the Plea Agreement, and Yazzie replied: "Yes."  FTR at 12:19:00-19:17 (Judge Puglisi, Yazzie). Judge Puglisi asked Yazzie whether he understood that, if the Court sentences him in accordance with the Plea Agreement, he has waived his right to appeal, and Yazzie responded: "Yes."  FTR at 12:19:18-19:28 (Judge Puglisi, Yazzie).

Judge Puglisi then asked Yazzie how he wants to plea to the Information.  See FTR at 12:19:42-44 (Judge Puglisi).  Yazzie stated: "Guilty."  FTR at 12:19:47-19:50 (Yazzie).  Judge Puglisi then announced that he found Yazzie competent and capable of entering a plea, and that his plea is knowing and voluntarily, and Judge Puglisi accepted Yazzie's plea of guilty and found him guilty of the offense.  See FTR at 12:19:51-20:29 (Judge Puglisi).  Judge Puglisi explained that the Court may accept or reject the Plea Agreement up to the date of Yazzie's sentencing hearing.  See FTR at 12:20:30-20:35 (Judge Puglisi).

Subsequent to his change of plea, Yazzie wrote the Court stating his concern with the Plea Agreement and his counsel.  See Letter to the Court from Willis Yazzie, dated May 2, 2011, filed May 2, 2011 (Doc. 43).   Yazzie asserted that Mr. Loonam, was not helping him and requested that the Court replace his appointed counsel.  Yazzie also stated that he was not happy with the Plea Agreement, and that he wants to proceed to trial, because he agreed to a sentence of fifteen to nineteen years, but the United States, he alleges, is now seeking to imprison him for

- 8 -

life.  See May 2 Letter at 1.  Yazzie sent a subsequent letter to the Court, in which he asserts that

the Federal Bureau of Investigation ("FBI") agents "badgered" him to make a statement.  Letter

to the Court from Willis Yazzie, dated May 15, 2011, filed May 15, 2011 (Doc. 46).  Yazzie

wants to suppress a confession he made to FBI agents on May 7, 2010.  See May 15 Letter at 1.

Yazzie states that he does not remember whether he was read his Miranda rights before he made

the statement.  See May 15 Letter at 1.  Yazzie also asserts that he did not penetrate Jane Doe 1's

vagina, and that, therefore, if the Court does not suppress his confession, the Court should

sentence him for a lesser offense.  See May 15 Letter at 1-3, 4-5.  Yazzie requested that the Court

provide him with new counsel, because, Yazzie asserts, Mr. Loonam told him "to cut my bullshit

out on the day of my sentence at the court."  May 15 Letter at 4.

The Court concluded that communications had broken down between Mr. Loonam and

Yazzie.  See Memorandum Opinion and Order at 1-2, filed October 6, 2011 (Doc. 54).  On

October 7, 2011, the Court appointed P. Jeffrey Jones to replace Mr. Loonam.  See CJA 20

Appointment of and Authority to Pay Court Appointed Counsel, filed October 7, 2011 (Doc. 55).

On November 29, 2011, Yazzie filed his 1st Motion.  Yazzie asserts that, at the time he

entered into to the Plea Agreement, he did not understand the law, and he believes that his

confession should be suppressed.  See 1st Motion at 2.  Yazzie contends, therefore, that the Plea

Agreement may not have been voluntary, because Yazzie agreed to the Plea Agreement without

a full understanding of the law.  Yazzie states that granting the 1st Motion will avoid

unnecessary time and expense.  See 1st Motion at 2.

The United States opposes the 1st Motion.  The United States asserts that Judge Puglisi

corrected any error in the plea colloquy by misstating the United States' burden of proof when

Yazzie "conceded that [because of] the age of the victim a jury would find that he used force."

Response at 6.  The United States asserts that Yazzie's further exchange with Judge Puglisi, in which he admitted that a jury would not believe him, corrects Judge Puglisi's earlier error.  See Response at 6.  The United States contends that Yazzie "benefitted substantially by entering into the plea agreement," because the Plea Agreement provides for a sentencing range of fifteen to nineteen years, whereas, if he had not pled guilty, he could face life imprisonment.  Response at 7.  The United States points out that Yazzie has not asserted his innocence.  The United States states that it will be prejudiced if Yazzie is allowed to withdraw his plea, because the victims "confidence in the finality of the criminal justice system would be shaken to its core."  Response at 9-10.  The United States contends that Yazzie delayed filing the 1st Motion.  The United States contends that Yazzie's former counsel, Mr. Loonam, did not preclude Yazzie from withdrawing his plea earlier, as Yazzie could have notified the Court independent of his counsel.  See Response at 10.  The United States also asserts that withdrawal will substantially inconvenience the Court, because the Court maintains an "extremely large criminal docket" and permitting Yazzie to withdraw will "needlessly add another case back to this Court's ever expanding trial calendar."  Response at 11.  The United States asserts that Yazzie has had the close assistance of competent counsel through this case, noting that Mr. Loonam obtained an "extremely generous plea agreement that reduced Yazzie's imprisonment range exposure significantly."  Response at 11.  The United States asserts that Yazzie knowingly and voluntarily pled, and states that Yazzie has not provided the Court with "specific information as to why or how the plea was not knowing or voluntary."  Response at 11.  The United States asserts that the "plea hearing demonstrates reasoned discussion about Yazzie's admission of the force element of the offense."  Response at 11.  The United States contends that, even though Yazzie did not explicitly admit to using force on Jane Doe 1, his plea is knowing and voluntary and akin to a

plea under <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970), because he agreed that the United States could prove that element at trial.[2]  <u>See</u> Response at 11.  The United States asserts that withdrawing Yazzie's plea would waste judicial resources, because the "District of New Mexico is among the busiest per judge in all of the United States."  Response at 12.  The United States asserts, therefore, that, although Yazzie may have second thoughts about his Plea Agreement, he has not given the Court a "reasonable rationale" for withdrawing his plea.  Response at 12.

On April 4, 2012, Yazzie filed the 2nd Motion, apparently without the assistance of counsel, as the 2nd Motion is handwritten.  Yazzie requests that the Court permit him to withdraw his guilty plea, because he did not "knowingly and voluntarily" enter into the Plea Agreement.  2nd Motion at 1.  Yazzie attaches two affidavits to the 2nd Motion -- from Jane Doe 1 and Jane Doe 2 -- the victims of his offense.  Both victims state a desire to change their previous statements alleging that Yazzie sexually abused them.  <u>See</u> Affidavit of Jane Doe 1, dated March 7, 2012, filed April 4, 2012 (Doc. 64)("I think it was very hard for me to accept a new parent in my life.  Well all I could say is that most of those reports were not true and he did not do all of those things to me, and my family."); Affidavit of Jane Doe 2, dated March 5, 2012, filed April 4, 2012 (Doc. 64)("I [] have a different point of view since now that I'm older.").

On July 6, 2012, Yazzie  requested that the Court dismiss Mr. Jones, because of Mr. Jones' "[l]ack of communication" with  him.  Motion for Dismissal of Counsel, filed July 6, 2012 (Doc. 73).  On August 8, 2012, because of Mr. Jones' retirement for health reasons, the Court appointed Kimberly A. Middlebrooks to represent Yazzie.  <u>See</u> CJA 20 Appointment of and Authority to Pay Court Appointed Counsel, filed August 8, 2012 (Doc. 74).

---

[2] A plea pursuant to <u>North Carolina v. Alford</u>, also referred to as an "<u>Alford</u> plea," "is a plea denominated as a guilty plea but accompanied by protestations of innocence.  Courts determining whether to accept <u>Alford</u> pleas are to treat them as pleas of nolo contendere." <u>United States v. Buonocore</u>, 416 F.3d 1124, 1127 n.2 (10th Cir. 2005)).

On October 15, 2012, Ms. Middlebrooks informed the Court that she is not certain Yazzie is competent to assist in his own defense.  See Unopposed Motion for Psychological Evaluation to Determine Competency, filed October 15, 2012 (Doc. 84)("Competency Motion"). Ms. Middlebrooks expressed that every time she meets with Yazzie she must explain to him the same information she previously relayed to him regarding his case.  See Competency Motion ¶¶ 2-3, at 1-2 ("Every encounter with Yazzie and counsel requires starting from scratch to explain again the issues already explained previously.").  Ms. Middlebrooks requested a psychological evaluation of Yazzie to determine his competency.  See Competency Motion ¶ 4, at 2.  The Court granted the Competency Motion on October 18, 2012.  See Order for Psychological Evaluation to Determine Competency, filed October 18, 2012 (Doc. 86).  After a psychological examination, the parties stipulated to Yazzie's competency.  See Stipulation of Parties as to Competency, filed December 27, 2012 (Doc. 90).

The Court held a hearing on February 4, 2013.  See Transcript of Hearing (taken February 4, 2013)("Tr.").[3]  The Court stated that it will accept the Stipulation of Parties as to Competency, and that it believes Yazzie is competent to understand the proceedings before the Court and to assist in his own defense.  See Tr. at 3:10-20 (Court).  During the hearing, Yazzie gave Ms. Middlebrooks some motions he drafted, including a motion to dismiss the Complaint, filed May 12, 2010 (Doc. 1), and the Indictment.  See Tr. at 4:3-11 (Middlebrooks).  Ms. Middlebrooks informed the Court that she will discuss the motions with Yazzie and address them with the Court at a later date.  See Tr. at 4:12-15 (Middlebrooks).  Ms. Middlebrooks stated that she has advised Yazzie that it is not wise, in her opinion, for him to persist in his desire to

---

[3] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

withdraw his plea.  See Tr. at 4:21-24 (Middlebrooks).  Ms. Middlebrooks stated that she has informed Yazzie that he may be facing life imprisonment if he succeeds in withdrawing his plea, but, nevertheless, Yazzie desires to withdraw his plea.  See Tr. at 4:25-5:14 (Middlebrooks).

Ms. Middlebrooks stated that it is her position that Yazzie must present the Court with a fair and just reason for requesting the withdrawal, because Judge Puglisi accepted Yazzie's guilty plea, rule 11(d)(2) of the Federal Rules of Criminal Procedure governs whether Yazzie may withdraw his plea.  See Tr. at 5:15-6:23 (Middlebrooks)(citing United States v. Salas-Garcia, 698 F.3d 1242 (10th Cir. 2012); United States v. Byrum, 567 F.3d 1255 10th Cir. 2009)).  Ms. Middlebrooks stated that, although Yazzie has not asserted innocence, he does deny one of the factual allegations against him -- specifically, that he penetrated Jane Doe 1 with his finger. See Tr. at 6:24-7:8 (Middlebrooks).  Ms. Middlebrooks stated that Yazzie asserts he told Mr. Loonam that he did not penetrate Jane Doe 1, but that statement remains in the Plea Agreement. See Tr. at 7:9-14 (Middlebrooks).  Ms. Middlebrooks noted that Yazzie did not assert at the plea hearing that he did not penetrate Jane Doe 1.  See Tr. at 7:15-8:7 (Middlebrooks, Court).  Ms. Middlebrooks noted that Yazzie conceded at the plea colloquy that, because of Jane Doe 1's age, the United States could prove that Yazzie used force when committing a sexual act with Jane Doe.  See Tr. at 8:15-9:1 (Middlebrooks).

Ms. Middlebrooks stated that, from her review of the plea colloquy, Yazzie did not want to enter into the Plea Agreement, because he wanted a sentence of less time.  See Tr. at 9:4-20 (Middlebrooks).  Ms. Middlebrooks stated, however, that she believes the plea colloquy was constitutionally adequate, notwithstanding Judge Puglisi's apparent initial misstatement of the United States' burden of proof.  See Tr. at 9:21-10:6 (Court, Middlebrooks).

Ms. Middlebrooks conceded that withdrawal would prejudice the United States, given the length of time that has passed and that evidence has likely grown stale.  See Tr. at 10:8-17 (Middlebrooks).  Ms. Middlebrooks asserted, however, that the United States is not heavily prejudiced by a withdrawal of Yazzie's plea.  See Tr. at 10:17-18 (Middlebrooks).  Ms. Middlebrooks stated that the reason for Yazzie's delay in requesting to withdraw his plea is that he has had multiple attorneys.  See Tr. at 10:19-11:3 (Middlebrooks).  Ms. Middlebrooks noted that Jane Doe 1 has not recanted her previous statement in detail, and Ms. Middlebrooks was not certain how much of any statements Jane Doe 1 previously made were "not true any more."  Tr. at 11:3-17 (Middlebrooks).  Ms. Middlebrooks stated that the alleged victims' recantations gives credence to Yazzie's statement that the Plea Agreement lacks a factual basis.  See Tr. at 11:18-12:1 (Middlebrooks).

Ms. Middlebrooks conceded that withdrawal would inconvenience the Court, given that Yazzie will file a motion to suppress his statement and the case may proceed to trial, which would require the expenditure of more judicial resources.  See Tr. at 12:8-13 (Middlebrooks).  Ms. Middlebrooks contended, however, that the Court should not give much weight to the judicial resources expended, given Yazzie's assertion that the United States lacks a factual basis to convict him.  See Tr. at 12:13-16 (Middlebrooks).

Ms. Middlebrooks stated that, in her understanding, Yazzie's plea was knowing and voluntary, and that the psychological examination of Yazzie did not reveal any evidence that the United States or Mr. Loonam coerced Yazzie into his plea.  See Tr. at 12:17-18:13 (Middlebrooks).  Ms. Middlebrooks stated that Yazzie believed that the Plea Agreement would allow his wife to receive custody of their children, but Ms. Middlebrooks conceded that there

was no evidence that custody of Yazzie's children was an issue addressed in the Plea Agreement or negotiations thereof.[4]  See Tr. at 13:4-19 (Middlebrooks).

Ms. Middlebrooks also conceded that judicial resources would likely be wasted by allowing Yazzie to withdraw his plea, as the case would proceed to trial.  See Tr. at 13:20-25 (Middlebrooks).  Ms. Middlebrooks stated that Yazzie had the close assistance of his former attorney -- Mr. Loonam -- during the plea negotiations, and that Mr. Loonam reviewed the Plea Agreement with him on several occasions before signing it.  See Tr. at 14:1-8 (Middlebrooks). In conclusion, Ms. Middlebrooks noted that, although not all of the factors weigh in Yazzie's favor, his main contention is that the United States now lacks the factual basis for his conviction. See Tr. at 14:9-20 (Middlebrooks).

The Court stated that it has not seen "the withdrawal of a plea agreement that's gone well for the defendant."  Tr. at 14:22-25 (Court).  The Court stated that a defendant withdrawing his or her plea is often a "train wreck," and the Court noted that a plea agreement is usually a substantial reduction from a defendant's guideline sentence.  Tr. at 15:1-7 (Court).  Ms. Middlebrooks stated that she had discussed with Yazzie the outcome of United States v. Jim, 877 F. Supp. 2d 1018 (D.N.M. 2012)(Browning, J.), in which the Court allowed a defendant to withdraw his plea of guilty.  See Tr. at 15:8-13 (Middlebrooks).  Ms. Middlebrooks also stated that Yazzie adamantly believes that he will be able to suppress his statement to the FBI.  See Tr. at 15:14-17 (Middlebrooks).  Ms. Middlebrooks stated that she is concerned that, even if Yazzie is able to suppress his initial statement to the FBI, he has written numerous letters to the Court in which he admits his guilt, which may be used against him at trial.  See Tr. at 15:17-24

---

[4] Ms. Middlebrooks refers to Yazzie's "girlfriend" at the hearing, but the Court believes she meant to say "wife," as the information before the Court indicates that any children belonged to Yazzie and his wife, Margaret Harjo.  Tr. at 13:4-13 (Middlebrooks).  See Response at 2, 3.

(Middlebrooks).  Ms. Middlebrooks expressed that she believes the outcome at trial would be a "train wreck that would not go well for Mr. Yazzie."  Tr. at 16:2-11 (Middlebrooks).  The Court agreed that Yazzie would be in a very bad position if he withdraws his plea, and the Court inquired of Ms. Middlebrooks whether Yazzie still wants to withdraw his plea notwithstanding the position he will be placed in.  See Tr. at 16:12-24 (Court).  Ms. Middlebrooks stated that Yazzie desires nonetheless to withdraw his plea.  See Tr. at 16:25-17:1 (Middlebrooks).

Yazzie then spoke on his own behalf.  See Tr. at 17:6-7 (Court, Defendant).  Yazzie stated that, under rule 11(e) of the Federal Rules of Criminal Procedure, his plea negotiations are inadmissible against him.  See Tr. at 17:7-9 (Yazzie).  Yazzie stated that he would not have accepted the Plea Agreement if the United States had not agreed to investigate the victims further, and he stated that he agreed to a lesser sentence.  See Tr. at 17:10-19 (Yazzie).  The Court asked Ms. Middlebrooks to clarify Yazzie's statement, and Ms. Middlebrooks stated she had discussed United States v. Jim with Yazzie, and that she told Yazzie that, if he succeeds in withdrawing his guilty plea, his Plea Agreement would be admissible as evidence against him at trial.  See Tr. at 17:23-18:10 (Middlebrooks).  The Court then addressed Yazzie and explained to him that, under case law from the Tenth Circuit, if Yazzie withdraws his guilty plea, the Plea Agreement and his statements to Judge Puglisi are likely admissible as statements against him at trial.  See Tr. at 18:11-23 (Yazzie).  The Court stated, therefore, that it is very concerned about allowing Yazzie to withdraw his plea because of the difficult situation he will be placed in with the statements admissible against him.  See Tr. at 18:24-19:4 (Court).  The Court also explained to Yazzie that the rule 11(c)(1)(A) does not prohibit the United States from using Yazzie's statements in the Plea Agreement against him.  See Tr. at 19:11-20:21 (Defendant, Court, Middlebrooks).

The United States responded to Yazzie's contention that it lacks the factual basis to convict him, and the United States stated that the word "force" in the Information can refer to the ability of an older person to coerce a younger person, even if physical force, as is commonly understood, was not used.  Tr. at 21:9-20 (Wishard).  The United States distinguished United States v. Gould, No. CR 03-2274 JB, 2006 WL 4061159 (D.N.M. Sept. 23, 2006)(Browning, J.), from Yazzie's case, in which the Court allowed a defendant to withdraw his plea of guilty, because the defendant in that case found new evidence, and the United States was ready to proceed to trial at the time.  See Tr. at 21:21-22:4 (Wishard).  The United States noted that, in United States v. Begaye, No. CR 10-0456 JB, 2012 WL 119602 (D.N.M. Jan. 3, 2012)(Browning, J.), the Court did not allow a defendant to withdraw his guilty plea, in part because the defendant's attorney achieved a very favorable result for him.  See Tr. at 22:5-11 (Wishard).  The United States stated that it telephoned the biological mother of the two victims in this case -- Jane Doe 1 and Jane Doe 2 -- and that their mother gave the United States the impression that the mother and the victims want to recant their previous statements.  See Tr. at 22:15-23:2 (Wishard).

The United States conceded that its case is "substantially more weak today than it was when he entered into the plea."  Tr. at 23:3-4 (Wishard).  The United States noted that the witnesses have not made previous statements under oath, and, if this matter were to proceed to trial, the United States would have Yazzie's inculpatory statements and confession, but no corroborating witnesses.  See Tr. at 23:5-9 (Wishard).  The United States asserted, therefore, that Yazzie's case is substantially different from that of United States v. Jim, because the United States' evidence has diminished with the passage of time.  See Tr. at 23:15-18 (Wishard).  The

United States stated, however, that it still believes it can prosecute the case, given the witnesses that are available and Yazzie's inculpatory statements.  See Tr. at 23:18-22 (Wishard).

The United States contended that Yazzie is not asserting his innocence, but, rather, he is contending that the law is inapplicable to him.  See Tr. at 23:23-25 (Wishard).  The United States asserted, however, that the most persuasive factor for not allowing Yazzie to withdraw his plea is that there is no evidence that he did not knowingly and voluntarily enter into the Plea Agreement.  See Tr. at 24:14-19 (Wishard).  The United States pointed out that, unlike the defendant in United States v. Jim -- who thought he would still proceed to trial after entering into the Plea Agreement -- "[t]here's nothing in the record to suggest that Mr. Yazzie [] entered into this plea agreement with the United States" unknowingly or involuntarily.  Tr. at 251-11 (Wishard).  The United States expressed that Yazzie is not asserting his innocence in his correspondence with the Court, but, rather, is "taking exception to the meaning of legal terms of argument that were contained in that plea agreement."  Tr. at 25:12-26 (Wishard).  The United States contended that Yazzie is expressing remorse over having entered into the Plea Agreement, "but to say at this point it would be fair and just to allow him to withdraw his plea would be to commit him to a course of procedures that we saw end very badly for Mr. Jim."  Tr. at 25:17-23 (Wishard).

The Court stated that it is concerned about Judge Puglisi's reference to "more probable than not" in the plea colloquy.  See Tr. at 26:3-12 (Court).  The United States stated that it believes Judge Puglisi's mistake was a harmless error, because the Plea Agreement adequately sets out that Yazzie's rights.  See Tr. at 26:13-23 (Wishard).  The United States contended that it was "clear to everyone there that he was entering a plea of guilty, he was admitting to penetration, and that he just couldn't g[e]t past the plain language -- the plain definition of the

word 'force.'"  Tr. at 27:11-16 (Wishard).  The Court expressed that, on appeal, the Tenth

Circuit might review the Court's work for whether there was a harmless error, but that, at the

trial level, the Court is concerned whether the work was done correctly.  See Tr. at 27:17-23

(Court).  The United States admitted that the Court is correct, but that, nonetheless, Yazzie's plea

was knowingly and voluntarily admitted.  See Tr. at 28:4-10 (Wishard).  The United States stated

that Yazzie's case is much more similar to that of United States v. Begaye than United States v.

Jim, because of the judicial resources that will be spent if this case goes to trial.  See Tr. at

28:19-29:8 (Wishard).

After the hearing, the Court issued an Order Finding Defendant Competent.  See Order

Finding Defendant Competent, filed February 7, 2013 (Doc. 93).

## LAW REGARDING WITHDRAWAL OF GUILTY PLEAS

Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure governs a motion to

withdraw a guilty plea before the imposition of a sentence.  Rule 11(d)(2)(B) provides that a

defendant may withdraw a plea if "the defendant can show a fair and just reason for requesting

the withdrawal."  Fed. R. Crim. P. 11(d)(2)(B).  Defendants do not have an absolute right to

withdraw a guilty plea.  See United States v. Siedlik, 231 F.3d 744, 748 (10th Cir. 2000).

District courts, however, have broad discretion in determining whether to grant  motions to

withdraw    pleas.    See United States v. Wright, 392 F. App'x 623, 627 (10th Cir.

2010)(unpublished)("We review the district court's denial of a motion to withdraw a guilty plea

for an abuse of discretion.");[5] United States v. Garcia, 577 F.3d 1271, 1274 (10th Cir.

--------

[5] United States v. Wright is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored . . . .

2009)("Although a motion to withdraw a plea prior to sentencing should be freely allowed, we will not reverse unless the defendant can show that the court acted unjustly or unfairly.").  The Tenth Circuit has repeatedly held that, when a defendant moves to withdraw a guilty plea before sentencing, the court must assess whether there is a fair and just reason for withdrawal based on the following factors:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and, if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

United States v. Yazzie, 407 F.3d 1139, 1142 (10th Cir. 2005).  While treated sometimes as an eighth factor, a district court may properly consider "the likelihood of conviction" when assessing whether to permit withdrawal of a guilty plea.  United States v. Carr, 80 F.3d 413, 421 n.5 (10th Cir. 1996)(recognizing that the Tenth Circuit has "suggested an additional factor to consider: the likelihood of conviction" (citing United States v. Glover, 911 F.2d 419, 421 (10th Cir. 1990)).  Accord United States v. Begaye, 2012 WL 119602, at *10  ("The Court believes the consideration of likelihood of conviction is relevant here, either in the context of the two factors of whether withdrawal would substantially inconvenience the Court or waste judicial resources, or as an additional factor.").

The defendant bears the burden of demonstrating a "fair and just reason" for withdrawal of the plea.  United States v. Griffin, 191 F. App'x 699, 701 (10th Cir. 2006)(unpublished).  In assessing a motion to withdraw a guilty plea, courts should give particular weight to knowing

---

However, if an unpublished opinion . . .  has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."  United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court finds that United States v. Wright has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

and voluntary statements that the defendant made under oath at the plea hearing.  See United States v. Messino, 55 F.3d 1241, 1248 (7th Cir. 1995).  In reaching their decisions, courts should also remember that "[t]he plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom."  United States v. Morrison, 967 F.2d 264, 268 (8th Cir. 1992).  While the right to withdraw a guilty plea before sentencing, therefore, is not absolute, the court should allow relief when the defendant can show a fair and just reason for withdrawal.  See United States v. Jim, No. CR 10-2653, 2011 WL 6013093, at *6-7 (D.N.M. Nov. 22, 2011)(Browning, J.).

In United States v. Harmon, 871 F. Supp. 2d 1125 (D.N.M. 2012)(Browning, J.), the Court determined that a defendant had not shown a fair and just reason for withdrawing his guilty plea.  The defendant did not assert his innocence, but, rather, asserted that the evidence against him should be suppressed.  The defendant requested that the Court reconsider its previous decision to not suppress evidence against him.  The Court denied the request for reconsideration, and determined, therefore, that the defendant had not presented a fair and just reason for withdrawing his guilty plea, as the United States possessed the same evidence to convict him as it did when the defendant pleaded guilty.  See 871 F. Supp. 2d at 1171-75.  In United States v. Begaye, the Court applied the seven factors in United States v. Yazzie, and determined that the defendant failed to present a fair and just reason for withdrawing his guilty plea.  See United States v. Begaye, 2012 WL 119602, at **8-12.  The defendant asserted that he may have a self-defense defense, but the Court found that he had not made a credible claim of innocence, and determined that a slim possibility of acquittal was not a fair and just reason for allowing the defendant to withdraw his plea.  See 2012 WL 119602, at *8-9, 11-12.  In United States v. Jim, the Court permitted a defendant to withdraw his plea of guilty, because the

defendant expressed that he did not understand that he waived his right to proceed to trial by entering into a plea agreement, and Judge Puglisi did not use the word "trial" during the plea colloquy.  United States v. Jim, 2011 WL 6013093, at *13.  The Court allowed Jim to withdraw his plea, even though the plea agreement included a waiver of Jim's right "to have a trial by jury."  See Plea Agreement ¶¶ 2(c), 3, at 1-2, filed in Case No. CR 10-2653 JB on February 28, 2011 (Doc. 25).

## LAW REGARDING RULE 410 WAIVERS

The general rule is that evidence of a guilty plea or statements made in plea negotiations are inadmissible evidence.  See Fed. R. Evid. 410.  Accord United States v. Mitchell, 633 F.3d 997, 1002 (10th Cir. 2011)("As a general matter, evidence of a guilty plea or statements made in plea negotiations are inadmissible.").  Rule 410 provides:

**Pleas, Plea Discussions, and Related Statements**

**(a) Prohibited Uses.**  In a civil or criminal case, evidence of the following is not admissible against the defendant who made the plea or participated in the plea discussions:

**(1)** a guilty plea that was later withdrawn;

**(2)** a nolo contendere plea;

**(3)** a statement made during a proceeding on either of those pleas under Federal  Rule of Criminal Procedure 11 or a comparable state procedure; or

**(4)** a statement made during plea discussions with an attorney for the prosecuting authority if the discussions did not result in a guilty plea or they resulted in a later-withdrawn guilty plea.

Fed. R. Evid. 410.

The Supreme Court, in United States v. Mezzanatto, 513 U.S. 196 (1995), addressed a challenge to a waiver that allowed the United States to use the defendant's statements during

plea negotiations to impeach any contradictory testimony that could arise if the case proceeded to trial.  See 513 U.S. at 198.  The Supreme Court held that, "absent some affirmative indication that the agreement was entered into unknowingly or involuntarily, an agreement to waive the exclusionary provisions of the plea-statement Rules is valid and enforceable."  513 U.S. at 210. The Supreme Court stated that, while there "may be some evidentiary provisions that are so fundamental to the reliability of the factfinding process that they may never be waived without irreparably 'discrediting the federal courts.' . . . enforcement of agreements like respondent's plainly will not have that effect."  United States v. Mezzanatto, 513 U.S. at 204.  Instead, the Supreme Court noted that admitting the plea statements for impeachment purposes enhanced the truth-seeking function of trials and would result in more accurate verdicts.  See United States v. Mezzanatto, 513 U.S. at 204 (Thomas, J.)("The admission of plea statements for impeachment purposes enhances the truth-seeking function of trials and will result in more accurate verdicts.")(emphasis in original).  In so holding, the Supreme Court rejected the following arguments that rule 410 should be unwaivable: (i) that rule 410 must be enforced to guarantee a fair procedure; (ii) that waivability would undermine the goal of voluntary settlement; and (iii) that waivability would invite prosecutorial reaching and abuse.  See United States v. Mezzanatto, 513 U.S. at 204-10.  A three-justice concurrence advocated that courts should narrowly construe the holding's scope and emphasized that the case dealt only with an impeachment waiver.  See United States v. Mezzanatto, 513 U.S. at 211 (Ginsburg, J., concurring).

In United States v. Mitchell, however, the Tenth Circuit extended the Supreme Court's reasoning in United States v. Mezzanatto to case-in-chief waivers.  There the Tenth Circuit upheld the following provision, in which the defendant agreed:

 [I]f I withdraw my plea of guilty, I shall assert no claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of

the Federal Rules of Criminal Procedure, or any other federal rule, that the defendant's statements pursuant to this agreement, or any leads derived therefrom, should be suppressed or are inadmissible at any trial, hearing, or other proceeding.

United States v. Mitchell, 633 F.3d at 999.  The Tenth Circuit commented: "We see no analytical distinction between Rule 410's application to impeachment waivers and case-in-chief waivers. The same reasoning for the former compels the latter."  United States v. Mitchell, 633 F.3d at 1004.  It further explained its decision and stated: "Even if the district court determines a guilty plea should be withdrawn, a waiver of Rule 410 only means a trial will contain more evidence -- both the evidence of the original guilty plea and evidence the plea was withdrawn."  United States v. Mitchell, 633 F.3d at 1005 (emphasis added).  The Tenth Circuit noted that its conclusion was in line with the other circuits who have considered expanding the rationale of United States v. Mezzanatto.  See 633 F.3d at 1006 (citing United States v. Sylvester, 583 F.3d 285, 289 (5th Cir. 2009); United States v. Young, 223 F.3d 905, 910-11 (8th Cir. 2000); United States v. Burch, 156 F.3d 1315, 1321 (D.C. Cir. 1998)).  The Tenth Circuit also stated that the facts of United States v. Mezzanatto supported its decision, because the defendant in that case received only an opportunity to discuss cooperation with the United States, while the United States made promises to Mitchell in the plea agreement.  See United States v. Mitchell, 633 F.3d at 1006.  Before reaching the rule 410 question, the Tenth Circuit determined that the defendant's guilty plea was knowing and voluntary.  See United States v. Mitchell, 633 F.3d at 1001.  Although the district court noted that the defendant's counsel may have exerted undue influence, the Tenth Circuit concluded that his counsel's influence did not render the plea involuntary.  See United States v. Mitchell, 633 F.3d at 1002.

The Tenth Circuit's analysis in United States v. Mitchell began with its determination that the plea agreement was enforceable.  See 633 F.3d at 1002.  Although the Tenth Circuit

stated at the outset that it was considering whether the rule 410 waiver was knowing and voluntary, it analyzed the plea as a whole instead.  See United States v. Mitchell, 633 F.3d at 1002 ("Based on a careful review of the record, we agree with the district court that Mitchell's plea was knowing and voluntary.").  The United States Court of Appeals for the District of Columbia Circuit similarly analyzed the validity of the rule 410 waiver in the context of the validity of the plea as whole.  See United States v. Burch, 156 F.3d at 1322.  The D.C. Circuit commented:

> Appellant's specific contention that he involuntarily waived the protections of Rules 11(e)(6) and 410 derives from his broader claim that he did not enter into the plea agreement voluntarily.  He makes no attempt to deconstruct the plea agreement into individual components, nor to claim that acceded to a particular provision involuntarily, independent of his intention with his respect to the entire plea.  Therefore, we can only review whether his waiver was knowing and voluntary through examining, as the trial court did, the nature of the plea agreement that subsumes it.

United States v. Burch, 156 F.3d at 1322 n.5.

## ANALYSIS

The Court will deny the 1st Motion and 2nd Motion.  Yazzie has not given the Court a fair and just reason for withdrawing his guilty plea.  Rule 11(d)(2)(B) provides that a defendant may withdraw a plea if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).  Defendants do not have an absolute right to withdraw a guilty plea.  See United States v. Siedlik, 231 F.3d at 748.  District courts, however, have broad discretion in determining whether to grant motions to withdraw pleas.  See United States v. Wright, 392 F. App'x. at 627.  The Tenth Circuit has repeatedly held that, when a defendant moves to withdraw a guilty plea before sentencing, a court must assess whether there is a fair and just reason for withdrawal based on the following factors:

> (1) whether the defendant has asserted his innocence; (2) whether withdrawal would prejudice the government; (3) whether the defendant delayed in filing his motion, and, if so, the reason for the delay; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was available to the defendant; (6) whether the plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

United States v. Yazzie, 407 F.3d at 1142.  While treated sometimes as an eighth factor, a district court may properly consider "the likelihood of conviction" when assessing whether to permit withdrawal of a guilty plea.  United States v. Carr, 80 F.3d at 421 n. 5.

Regarding the first factor, whether Yazzie has asserted his innocence, although Yazzie contests some of the factual basis underlying his statement in the Plea Agreement, he has not clearly asserted that he is innocent of the charged offense.  To satisfy the first factor based on an assertion of legal innocence, the Tenth Circuit has held that a defendant must present a "credible claim of legal innocence," United States v. Hamilton, 510 F.3d 1209, 1214 (10th Cir. 2007), and that a "defendant's subjective belief in his own innocence does not mandate allowing him to withdraw his plea of guilty," United States v. Hickok, 907 F.2d 983, 985 n.2 (10th Cir. 1990).  Yazzie contests that he did not use "force" to penetrate Jane Doe 1's vagina, as his statement in the Plea Agreement reads.  May 2 Letter at 1; FTR at 12:12:10-12:21 (Judge Puglisi, Yazzie).  He also asserts that he did not touch Jane Doe 1's genitalia under her clothing, and, therefore, did not commit a sexual act within the meaning of 18 U.S.C. § 2246(2)(c), which criminalizes "the penetration, however, slight, of the anal or genital opening of another by a hand or finger . . ." and is the charged offense in the Information.  18 U.S.C. § 2246(2)(c).  See Information at 1; May 15 Letter at 2; Plea Agreement ¶ 3, at 2.  He has also attached affidavits from Jane Doe 1 and Jane Doe 2 to his 2nd Motion.  Jane Doe 1 states that "most of those reports were not true and he did not do all of those things to me," Jane Doe 1 Aff. at 1, and Jane Doe 2 states that she has a "different point of view since now that I'm older," Jane Doe 2 Aff. at 1.  These affidavits

are exculpatory, but only to a limited extent; they suggest that some reports remain true and give no indication of what Jane Doe 2's new point of view is. Indeed, Yazzie continues to admit that he committed a sexual act with a minor, see FTR at 12:15:20-15:32 42 (Yazzie, Judge Puglisi), and he admits that "[y]es I did wrong with JD1 but we did that with no madness or force and she the one that like me but I should of not did what I did with her," May 2 Letter at 1. Although Yazzie is contesting certain factual elements of the offense, he does not contest that, because of Jane Doe 1's age, a jury would find him guilty of sexual abuse under 18 U.S.C. § 2241(a). See FTR at 12:15:20-15:42 (Yazzie, Judge Puglisi). The Tenth Circuit has previously found that a guilty plea was knowing and voluntary, despite a defendant's refusal to acknowledge that she had the requisite intent to commit the crime. See United States v. Vidal, 561 F.3d 1113 (10th Cir. 2009). The Tenth Circuit noted that, because the defendant conceded that the United States had sufficient evidence to establish that she committed the crime, her plea was knowingly and voluntarily given. See 562 F.3d at 1119. Similarly, Yazzie's contention that he did not use force does not render his plea unknowing or involuntary, as he concedes that the United States could prove he sexually abused Jane Doe 1.

　　　To the extent Yazzie is asserting he has new evidence that would make it difficult for the United States to prove its case, the existence of new evidence does not controvert Yazzie's other, repeated, confessions of guilt.[6] See, e.g., May 15 Letter at 1 ("I'm sorry for what I have done and forgive me."). On the other hand, Yazzie contests that he did not touch Jane Doe 1

---

[6] Even if the Court construed Yazzie's 2nd Motion liberally, and inferred that, by attaching the affidavits, Yazzie is somehow asserting his innocence, the affidavits are not much help to Yazzie. Neither victim states a desire to recant all of her previous allegations that Yazzie never committed a sexual act with her and that Yazzie is innocent. See Jane Doe 1 Aff. at 1 ("[A]ll I could say is that most of those reports were not true and he did not do all of those things to me, and my family."); Jane Doe 2 Aff. at ("I . . . have a different Point [sic] of view now that I'm older.").

underneath her clothing, which, if true, raises the possibility that Yazzie pled guilty to the incorrect statute.  On the whole, this factor is either neutral, as Yazzie asserts he is guilty of a lesser offense than the Information charges, or weighs against allowing him to withdraw his plea, because he has repeatedly admitted that he did wrong.

Second, the prejudice that Yazzie's withdrawal of his plea will pose to the United States weighs against allowing him to withdraw his plea.  The United States has informed the Court that its evidence has diminished with the passage of time, as it would primarily present witness testimony against Yazzie, and recollections have faded or changed in the two years that have passed since this case began.  See Tr. at 23:3-4 (Wishard)(expressing that the United States case is "substantially more weak today than it was when [Yazzie] entered into the plea").  The Tenth Circuit has recognized that requiring the United States to try a case it would not otherwise have to try, particularly when preparation for the trial will be difficult, results in prejudice to the United States.  See United States v. Jones, 168 F.3d 1217, 1220 (10th Cir. 1999)(finding that allowing the defendant to withdraw his plea "could also prejudice the government," because the "government will face the presumably difficult task of locating confidential informants").  Indeed, if every defendant were allowed to wait until the evidence against him or her had grown stale, and was then permitted to withdraw a guilty plea, the United States would be severely handicapped in its ability to prosecute criminal cases.  On the other hand, the United States maintains that it can prosecute this case.  While this factor does not weigh heavily in any one direction, it weighs somewhat in favor of not permitting Yazzie to withdraw his guilty plea.

The third factor weighs slightly against Yazzie's 1st Motion and 2nd Motion.  Yazzie filed his 1st Motion approximately nine months after the plea hearing, which is a significant portion of time, but his delay is somewhat excusable because he was experiencing difficulties

with his counsel at the time.  On the other hand, Yazzie has taken the opportunity to write to the Court without the assistance of an attorney on multiple occasions.  He could have, therefore, written to the Court earlier to request a withdrawal of his plea.  See United States v. Kramer, 168 F.3d 1196, 1202 (10th Cir. 1999)(recognizing that an eight-month delay and a motion to withdraw a guilty plea filed on "the eve of sentencing" constituted delay).  This factor, thus, weighs slightly against permitting Yazzie to withdraw his plea.

Turning to the fourth and seventh factors -- whether the withdrawal will substantially inconvenience the Court or waste judicial resources -- the Court notes that there will almost always be some inconvenience or resource allocation when a case that has settled goes to trial. In previous cases, the Court has recognized that the gravity of the defendant's circumstances in a given case influences whether "the withdrawal of his plea, with all that it implies, would substantially inconvenience the Court or waste judicial resources."  United States v. Harmon, 871 F. Supp. 2d at 1172.  See United States v. Gould, 2006 WL 4061159, at *3 (same).  Yazzie pled guilty to a significant charge, which carries a possible sentence of life imprisonment.  If the Court allows Yazzie to withdraw his guilty plea, it will likely have to hold a suppression hearing, decide the suppression motion, decide what, if any, previous statements of Yazzie's are admissible, and would then proceed to a jury trial.  There is no doubt that is a lot judicial work in a busy district like New Mexico.  On the other hand, the Court is in the justice business, not trying to avoid work.  If justice requires a trial, so be it.  Although the underlying facts of this case do not appear particularly complex or suggest that the trial would require more time than other sexual abuse cases off the reservations, the distinguishing fact here is that the prospect of Yazzie securing an acquittal appear low.  If the Court allows Yazzie to withdraw his plea and this matter proceeds to trial, the United States may have a difficult time cross-examining

witnesses who may attempt to recant their previous statements, but Yazzie has made numerous admissions of guilt in various forms which may be used against him at trial.  See United States v. Carr, 80 F.3d at 421.[7]  Indeed, Yazzie has agreed that his statements in the Plea Agreement are admissible against him under rule 801(d)(2) in any subsequent proceeding or trial.  See Plea Agreement ¶ 10(c), at 5; United States v. Mitchell, 633 F.3d at 999-1002 (upholding a defendant's waiver of any challenges to statements made in a plea agreement).  It is very likely that the statements he made in the Plea Agreement will be admissible and will be highly prejudicial; they probably will, alone, defeat a directed verdict.  Moreover, if the United States is concerned that its evidence no longer matches the Indictment, it can supersede the Indictment, probably coming up with something that matches even Yazzie's latest version of events.  In sum, the United States' likely ability to be nimble with the charges and Yazzie's multiple admissions likely creates more problems for Yazzie than problems for the United States.

The Court has no sound basis to conclude that he would receive a more favorable sentence after trial than that which he has in the Plea Agreement, which is a very favorable sentence.  The Court concludes therefore, that allowing Yazzie to withdraw his plea will cause more inconvenience to the Court and waste more judicial resources than in most cases in which a defendant proceeds to trial without a protracted litigation around the defendant's guilty plea, and this factor counsels against allowing Yazzie to withdraw his plea, particularly given the busy criminal docket in this district.  While treated sometimes as an eighth factor, a district court may properly consider "the likelihood of conviction" when assessing whether to permit withdrawal of

---

[7]  The Tenth Circuit recognized in United States v. Carr that, while "[t]he anticipated length and complexity of the government's case . . . should not necessarily weigh against [a defendant] since he originally had a right to a jury trial," the "disruption of [the court's] docket and consequent delays in pending cases" justified this factor weighing against the defendant in that case.  United States v. Carr, 80 F.3d at 420-21.

a guilty plea.  See United States v. Carr, 80 F.3d at 421 n.5 (recognizing that the Tenth Circuit has "suggested an additional factor to consider: the likelihood of conviction" (citing United States v. Glover, 911 F.2d 419, 421 (10th Cir. 1990)).  The Court believes that consideration of likelihood of conviction is relevant here, either in the context of the two factors of whether withdrawal would substantially inconvenience the Court or waste judicial resources, or as an additional factor. The Court concludes, however, that the inconvenience to the Court and waste of judicial resources would be severe, not because a trial would be so hard on the Court, but because it would be a waste of time and get us to the same point that Yazzie is in today -- convicted.  Thus, these factors weigh against withdrawal.

The Court finds that Yazzie had close assistance of counsel before and during his plea hearing.  The Court may consider whether a defendant was represented by "skilled and respected counsel."  United States v. Siedlik, 231 F.3d at 750.  See United States v. Byrum, 567 F.3d 1255, 1265 (10th Cir. 2009).  Although Yazzie's relationship with Mr. Loonam broke down after the plea hearing, that subsequent break down does not appear to have affected the Plea Agreement or plea negotiations.  There is no evidence that Mr. Loonam did not adequately prepare Yazzie for the plea colloquy and to sign the Plea Agreement.  Although Yazzie is now asserting that he did not penetrate Jane Doe 1, and that he told Mr. Loonam that he did not penetrate Jane Doe 1, and that Mr. Loonam failed to negotiate the removal of that statement from the Plea Agreement, the Court is reluctant to attach much weight to these assertions.  See May 15 Letter at 3; Tr. at 7:9-14 (Middlebrooks).  It is odd that Yazzie did not raise this factual issue at the plea hearing, where he felt confident to raise other factual disputes with the Plea Agreement, and where he ultimately admitted that the United States could prove its charges against him.  See FTR at 12:15:45-16:04 (Judge Puglisi: "Even though you feel that there wasn't force used, after you have looked at all

the evidence in the case is it your belief that a jury would not believe you and find that you did use force?" Yazzie: "Yes."). It is also troubling to the Court that Yazzie makes this allegation after securing new counsel and after the evidence has grown considerably more stale in his case, and, therefore, the likelihood of this allegation being contradicted has diminished. Although the Court determined that Yazzie's relationship with Mr. Loonam broke down after the plea hearing, at the plea hearing, Yazzie affirmed that he had been satisfied with Mr. Loonam "in all respects" in his representation. FTR at 12:06:40-06:44 (Judge Puglisi, Yazzie). The Court finds that Mr. Loonam secured a very favorable Plea Agreement for Yazzie, as his offense carries a possibility of life imprisonment, but the parties have stipulated to a sentence between fifteen and nineteen years. See Plea Agreement ¶ 4(a), at 2; id. ¶ 10(a), at 4. The Court has previously noted Mr. Loonam's professionalism in representing other criminal defendants, and the Court has confidence in his abilities. See United States v. Jim, 2011 WL 6013093, at *9 ("[T]he Court noted Mr. Loonam's professionalism and that it was reluctant to allow Jim to change counsel."). Although Yazzie may not like the seriousness of the charges against him, and indeed desires a lesser sentence, Yazzie's discontentment with his situation does not mean that Mr. Loonam's performance was deficient in any respect. If anything, taking Yazzie's allegation as true -- that Mr. Loonam failed to advocate for a lesser offense in the plea negotiations -- this factor may be neutral with regards to Yazzie's 1st Motion and 2nd Motion, or weigh against withdrawal. Mr. Loonam might have focused his professional attention on the bottom line -- the length of Yazzie's sentence -- rather than focusing on getting a different charge.

Last, the Court gives substantial weight to the sixth factor -- whether the plea was knowingly and voluntarily given. The Tenth Circuit has recognized that a defendant's guilty plea must be knowing, voluntary, and intelligent. See United States v. Libretti, 38 F.3d 523, 529

(10th Cir. 1994).  To enter a plea that is knowing and voluntary, a defendant must have "a full understanding of what the plea connotes and of its consequence." Boykin v. Alabama, 395 U.S. 238, 244 (1969).  A defendant must understand only the plea's "direct consequences." United States v. Hurlich, 293 F.3d 1223, 1230 (10th Cir. 2002).  Although Yazzie makes a conclusory assertion that his plea was not knowing and voluntarily given, see 1st Motion at 2-3; 2nd Motion at 1, Yazzie has provided the Court with no basis to find that he pleaded guilty without a full understanding of the plea and its consequences.  Unlike the defendant in United States v. Jim, who asserted that he did not understand that he was giving up other rights by entering into the Plea Agreement, Yazzie's main contention with the Plea Agreement appears to be that he believes he did not use force, that he thinks he should receive a lesser sentence, and that he thought his wife would receive custody of their children if he entered into the Plea Agreement. Compare United States v. Jim, 2011 WL 6013093, at *13 (finding that a defendant's assertion that he did not understand that by pleading guilty he gave up a right to trial demonstrated that his plea was not knowingly and voluntarily given), with Tr. at 13:4-19 (Middlebrooks)(stating that Yazzie thought his wife would receive custody of their children if he entered into the Plea Agreement, but conceding that the custody of Yazzie's children was never part of the plea negotiations), and May 2 Letter at 1 (stating that Yazzie did not use force on Jane Doe 1), and May 15 Letter at 3 (stating that Yazzie should qualify for a lesser sentence because he did not touch Jane Doe 1 underneath her clothing).  Although Yazzie may have sought to make other arrangements with the United States, he affirmed at the plea hearing that the Plea Agreement was the only binding agreement between the United States and him.  See FTR at 12:10:15-12:10:33 (Judge Puglisi, Yazzie).

A concern to the Court with the plea colloquy was Judge Puglisi's reference to a "more probable than not" standard.  FTR at 12:14:22-15:06 (Judge Puglisi).  After careful review of the transcript of the plea hearing, however, the Court concludes that using this term does not create a constitutional problem with Yazzie's plea colloquy.  Judge Puglisi did not inform Yazzie that the United States need prove his guilt by only a "more probable than not" standard; rather, Judge Puglisi's reference to this standard was in a discussion of the likelihood that a jury would find Yazzie guilty.  Judge Puglisi's question to Yazzie was:

> You feel that you didn't use force, you said that the minor in this Information charging you with the crime of aggravated sexual abuse kept coming to you, but do you, after considering all of the evidence that the United States has marshaled against you, do you feel that it is more probable than not that a jury would find that you did use force?  In other words, that they would believe the evidence in this case aside from what you have to say?

FTR 12:14:22-15:09 (Judge Puglisi).  Judge Puglisi did not, therefore, misstate the United States' burden of proof.  Yazzie affirmed that he was pleading guilty because he is "in fact guilty."  FTR at 12:10:34-12:10:45 (Judge Puglisi, Yazzie).  Further, the Plea Agreement, which Yazzie signed, includes an admission under penalty of perjury in which Yazzie states that, if he "chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt of the offense to which I am pleading guilty beyond a reasonable doubt."  Plea Agreement ¶ 8, at 3.  Yazzie affirmed at the plea hearing that he had reviewed the Plea Agreement with his attorney, that he understood the Plea Agreement, and that he had no questions about the information in the Plea Agreement.  See FTR at 12:06:48-07:35 (Judge Puglisi, Yazzie).  Yazzie further admitted that, notwithstanding his contention that he did not use force, he believed a jury would find he used force, and that the rest of his statement in the Plea Agreement is true.  See FTR at 12:12:22-12:34 (Judge Puglisi, Yazzie); FTR at 12:15:45-16:04 (Judge Puglisi, Yazzie).  Yazzie affirmed that he had not been forced to enter a guilty plea, and

that he was not under the influence of a mental illness, alcohol, or addition to drugs at the plea hearing.   See FTR at 12:06:20-06:35 (Judge Puglisi, Yazzie); id. at 12:10:34-12:10:45. Additionally, any question regarding Yazzie's competency has been resolved, and the Court finds that Yazzie has been competent throughout these proceedings.   See Order Finding Defendant Competent ¶ 2, at 1 ("In a written opinion dated November 29, 2012, Dr. Foote finds that Willis Yazzie is competent in these proceedings.").   The Court concludes, therefore, that Judge Puglisi's reference to Yazzie's belief in the probability of his conviction is not an error that caused Yazzie to not understand the consequences of his plea.   Rather, Yazzie has demonstrated through his letters to the Court that he understands the consequences of pleading guilty to the specific offense charged in the Information.   See May 15 Letter at 3 (distinguishing between a conviction under 18 U.S.C. § 2246(2)(D) and 18 U.S.C. § 2246(2)(C)).   The Court determines, therefore, that this factor counsels against allowing Yazzie to withdraw his guilty plea.

When the Court first confronted motions to withdraw early in its career, it was inclined to grant them, reasoning that, if someone wants to go to trial, he or she should have that right.   The Court watched a few of those trials end very badly for the defendants.   Since those train wrecks, the Court has been more rigorous in its application of the United States v. Yazzie factors.   The most troubling aspect is not Judge Puglisi's colloquy, but the victims' affidavits.   While it concerns that Court that the victims may be prepared to testify differently than they were earlier, that fact cuts both ways.   It always concerns the Court deeply that it may convict an innocent man, but it also concerns the Court that Yazzie -- through his wife and others -- has used the time to persuade witnesses to change their testimony and then move to withdraw his plea.   In the end,

however, the affidavits do not point to a just and fair reason; indeed, they may be a reason, on reflection, to not allow withdrawal.

On balance, the Court determines that Yazzie has not given the Court a fair and just reason for permitting him to withdraw his guilty plea.  No factor weighs in favor of allowing him to withdraw his plea.  The Court believes that, in light of Yazzie's mostly uncontested guilt, and the favorable result he has in the Plea Agreement, Yazzie does not have a reasonable expectation of better prospects at trial.  "The plea of guilty is a solemn act not to be disregarded because of belated misgivings about [its] wisdom."  United States v. Morrison, 967 F.2d at 268.  The Court, thus, will not permit Yazzie to withdraw his guilty plea.

**IT IS ORDERED** that: (i) the Defendant's Motion to Withdraw Plea of Guilty, filed November 29, 2011 (Doc. 59); and (ii) the Defendant's Motion to Withdraw Plea of Guilty, filed April 4, 2012 (Doc. 64), are denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
   United States Attorney
Jacob Wishard
   Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

Kimberly A. Middlebrooks
Albuquerque, New Mexico

  *Attorney for the Defendant*