## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                           No. CR 10-1761 JB

WILLIS YAZZIE,

      Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Amended Sentencing Memorandum in Support of Rule 11(c)(1)(C) and Objections to PSR, filed June 19, 2013 (Doc. 107)("Sentencing Memo.").[1]  The Court held a sentencing hearing on March 21, 2014. The primary issues are: (i) whether the Court should continue the sentencing, at Yazzie's request, to allow the victims to attend the sentencing; (ii) whether the Court should apply the 4-level enhancement under U.S.S.G. § 2A3.1(b)(1), for an offense that involves conduct that violates 18 U.S.C. § 2241(a), when Defendant Willis Yazzie pled guilty to 18 U.S.C. § 2241(a); (iii) whether the Court should apply the 5-level enhancement under U.S.S.G. § 4B1.5(b)(1), for a repeat and dangerous sex offender against minors where the defendant engaged in a pattern of activity involving prohibited sexual conduct, when Yazzie engaged in, but was not convicted for, prohibited sexual conduct; and (iv) whether the Court should grant Yazzie a variance based on his lack of guidance growing up and his mental condition.  The Court will not continue the sentencing, because Yazzie may not assert the victims' rights, and the victims have not requested

---

[1] The Sentencing Memo. amended the Defendant's Sentencing Memorandum in Support of Rule 11(c)(1)(C) and Objections to PSR, filed June 19, 2013 (Doc. 106): "This document is amended from the original Sentencing Memorandum and Objections in order to attach the signature block that was inadvertently not included on the original."  Sentencing Memo. at 1.

to continue the sentencing so that they may attend. The Court will overrule Yazzie's sentencing objections. Section 2A3.1(b)(1) applies automatically when the defendant is convicted under 18 U.S.C. § 2241(a), and thus, the 4-level enhancement applies. Although Yazzie has not been convicted for other instances of prohibited sexual conduct, § 4B1.5(b)(1) does not require that the pattern of activity involves convictions. The Court will vary from the sentencing guidelines range, accept the Plea Agreement, filed February 9, 2011 (Doc. 38), and sentence Yazzie to a term of 188 months incarceration and eight years of supervised release.

## FACTUAL BACKGROUND

Yazzie lived in an "eight-foot-by-eight-foot shack" in Two Grey Hills, New Mexico, with his wife and their four children, two of whom were Jane Doe 1 and Jane Doe 2, Yazzie's step-daughters. United States' Response to Defendant's Motion Withdraw [sic] His Plea of Guilty at 1, filed December 30, 2011 (Doc. 62)("Response")(citation omitted). The Navajo Tribal Police Department learned that Yazzie was allegedly abusing Jane Doe 1, who was thirteen years old at the time, and Jane Doe 2, who was then ten years old, on May 3, 2010. Response at 1. On May 10, 2010, the Navajo Police interviewed Yazzie regarding the allegations. See Response at 4. Before the interview, Yazzie gave an oral and written waiver of his rights under Miranda v. Arizona, 384 U.S. 436 (1966).[2] See Response at 4. Yazzie admitted that he had an intimate

---

[2] Miranda v. Arizona "requires that procedural safeguards be administered to a criminal suspect prior to 'custodial interrogation.'" United States v. Perdue, 8 F.3d 1455, 1463 (10th Cir. 1993)(quoting Miranda v. Arizona, 384 U.S. at 444). The Supreme Court provided the substance of the warning that must be given to a defendant to meet these procedural safeguard requirements:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner

relationship with Jane Doe 1, which involved him kissing Jane Doe 1, holding hands with her, putting his penis on her cheek and telling her to suck it, which she would not, and touching her vagina, both over her clothes and under clothes, including penetration with his finger.  See Response at 4.  Yazzie denies ever having intercourse with Jane Doe 1.  See Response at 1-2. Yazzie admitted that he touched Jane Doe 2's vagina one night, but contends that he thought it was his wife's, and not Jane Doe 2's, which he was touching.  See Response at 5.  He denies having intercourse with Jane Doe 2.  See Response at 5.

## PROCEDURAL BACKGROUND

In the Criminal Complaint, filed May 12, 2010 (Doc. 1), Plaintiff United States of America charged Yazzie with committing "multiple acts of aggravated sexual abuse to two minor children under the ages of twelve and sixteen years in violation of" 18 U.S.C. §§ 2241(c) and 2246(2)(C)(D).  Criminal Complaint at 1.  A person convicted under 18 U.S.C. § 2241(c) "shall be fined under this title and imprisoned for not less than 30 years or for life."  18 U.S.C. § 2241(c).  A Grand Jury indicted Yazzie on two counts of aggravated sexual abuse: as to Jane Doe 1, the Grand Jury indicted Yazzie for violating 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(C), and as to Jane Doe 2, the Grand Jury indicted him for violating 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(D).  See Indictment at 1-2, filed June 10, 2010 (Doc. 12).  Yazzie pled not guilty to the two counts in the Indictment.  See Clerk's Minutes of Arraignment at 1, filed June 16, 201 (Doc. 14).

---

and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning. Likewise, if the individual is alone and indicates in any manner that he does not wish to be interrogated, the police may not question him.

Miranda v. Arizona, 384 U.S. at 444-45.

As part of a Plea Agreement, filed February 9, 2011 (Doc. 38), Yazzie pled guilty to an Information, filed February 9, 2011 (Doc. 35), in which the United States charged Yazzie with Aggravated Sexual Abuse of Jane Doe 1, in violation of 18 U.S.C. §§ 1153, 2241(a), and 2246(2)(C).  See Information at 1; Plea Agreement ¶ 3, at 2.  A person convicted under 18 U.S.C. § 2241(a) "shall be fined under this title, imprisoned for any term of years or life, or both."  18 U.S.C. § 2241(a).  The United States and Yazzie made an agreement to a specific sentence "between 15 years (180 months) and 19 years (228 months) imprisonment," pursuant to rule 11(c)(1)(c) of the Federal Rules of Criminal Procedure.  Plea Agreement ¶ 10(a), at 4.

The United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR") for Yazzie on April 27, 2011.  In the PSR, the USPO notes that, according to the Plea Agreement, the parties agreed that the appropriate sentence is 15 to 19 years, and that Yazzie "cannot seek a downward departure, variance, or deviation of any kind from the agreed upon sentencing range."  PSR ¶ 4(a)-(b), at 3.  After comparing the 2009 edition of the United States Sentencing Guideline Manual to the 2010 edition, the USPO determined that neither edition was more beneficial and used the 2010 edition for the computations.  See PSR ¶ 29, at 9. The USPO calculates Yazzie's base offense level at 30 under U.S.S.G. § 2A3.1(a)(2).  See PSR ¶ 30, at 9.  It increases the calculation by 4 levels pursuant to § 2A3.1(b)(1), which provides that "if the offense involved conduct described in 18 U.S.C. § 2241(a) or (b), increase by 4 levels." PSR ¶ 31, at 10.  18 U.S.C. § 2241(a) defines aggravated sexual abuse by force or threat: "Whoever . . . knowingly causes another person to engage in a sexual act -- (1) by using force against that other person; or (2) by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping; or attempts to do so . . . ." 18 U.S.C. § 2241(a).  The USPO relies on this background for a 4-level enhancement:

> The defendant was charged with Aggravated Sexual Abuse by force or threat. [Jane Doe 1] described being alone with Yazzie on numerous occasions when he would force her onto the bed then sit on her abdomen so she was unable to move. He would then kiss her, forcing her to kick, and hit him until he let her go. [Jane Doe 1] also reported that the defendant threatened to hurt their mother if she or her sister disclosed the abuse.

PSR ¶ 31, at 10. The USPO applied an additional 4-level enhancement under U.S.S.G. § 2A3.1(b)(2), see PSR ¶ 32, at 10; that provision provides for a 4-level increase if the "victim had not attained the age of twelve years," or a 2-level increase if the "victim had attained the age of twelve years but had not attained the age of sixteen years," U.S.S.G. § 2A3.1(b)(2). The PSR calculates that Jane Doe 1 "was 12 years old at the time the abuse charged in the Information occurred, however, reports reflect and the defendant admitted that the abuse began in 2008, when [Jane Doe 1] was less than 12 years of age." PSR ¶ 32, at 10. Further, the PSR calculates that Jane Doe 2 was 10 years old when Yazzie sexually abused her. See PSR ¶ 32, at 10. The USPO applied a 2-level increase under U.S.S.G. § 2A3.1(b)(3), which requires the 2-level increase "if the victim was in the custody, care, or supervisory control of the defendant." PSR ¶ 33, at 10. "The defendant was in a long term relationship with the victim's [sic] mother and was considered their stepfather. The victim's [sic] mother stated she occasionally left the children alone to be supervised by Yazzie." PSR ¶ 33, at 10. The USPO also increases the offense by 5 levels pursuant to § 4B1.5(b)(1), an adjustment for repeat and dangerous sex offenses against minors; that provision applies "in any case in which the defendant's instant offense of conviction is a covered sex crime and the defendant engaged in a pattern of activity involving prohibited sexual conduct . . . ." PSR ¶ 37, at 10. The USPO asserts that this increase is appropriate because of Yazzie's conduct with Jane Doe 1 between 2008 and 2010, and his conduct with Jane Doe 2 during the several months before his arrest. See PSR ¶ 37, at 10-11. Based on Yazzie's acceptance of responsibility, the USPO reduces the calculation by 2 levels pursuant to U.S.S.G.

§ 3E1.1 and an additional 1 level for a motion it expects the United States to make at sentencing. See PSR ¶ 38-39, at 11.  The USPO calculates that Yazzie has 2 criminal history points, based on an arrest on December 31, 2003, resulting in a criminal history category of II.  See PSR ¶ 49, at 14.  "Based on the total offense level of 42 and a criminal history category of II, the guideline imprisonment range is 360 months to life."  PSR ¶ 73, at 19.

Yazzie objected to the PSR's 5-level enhancement under U.S.S.G § 4B1.5(b)(1), which raises Yazzie's offense level to 45 before reducing the range for acceptance of responsibility. See Letter from James Loonam to Victoria Gutierrez, United States Probation Officer, at 1, dated April 29, 2011, filed April 29, 2011 (Doc. 129)("PSR Objections").  "Mr. Yazzie does not dispute the factual basis for this suggestion.  Mr. Yazzie does dispute raising his Offense Level beyond level 43.  There can be no offense level beyond level 43."  PSR Objections at 1-2.  He cites an application note to the sentencing table that provides: "In rare cases, a total offense level of . . . more than 43 may result from application of the guidelines. . . .  An offense level of more than 43 is to be treated as an offense level of 43."  PSR Objections at 2 (citing U.S.S.G. Sentencing Table, Ch. 5 Pt. A, application note 2).  He argues that the pre-plea offense level should be capped at 43; with the acceptance of responsibility reductions, his final offense level would be 40, resulting in a sentencing range of 324 to 405 months.  See PSR Objections at 2.

The USPO responds to this objection by attaching a copy of United States v. Houser, 70 F.3d 87 (11th Cir.), to the Addendum to the Presentence Report, disclosed May 3, 2011 ("First Addendum"); United States v. Houser explains that a district court should follow the sentencing guidelines' sequential instructions to determine a defendant's offense level and should not apply the level 43 cap until after it has applied any reductions for acceptance of responsibility.  See 70

F.3d at 92.  The USPO did not adjust its sentencing guidelines range.  See First Addendum at 1-2.

In his May 15, 2011 Letter, Yazzie challenges the PSR's conclusion that he "touched the victim's genitalia underneath as opposed to over her clothing."  May 15, 2011 Letter at 2.  He argues that he did not commit a sexual act as 18 U.S.C. § 2246(2) defines that term, see May 15, 2011 Letter at 3 -- "the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," or "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person," 18 U.S.C. § 2246(2)(c)-(d).  Yazzie asserts that the record does not support the conclusion that he committed a sexual act and that, had the PSR applied the provisions for sexual contact rather than for a sexual act, the guidelines range would be lower.  May 15, 2011 Letter at 3-4.  He cites United States v. Poor Bear, 359 F.3d 1038 (8th Cir. 2004), in which the Court of Appeals for the Eighth Circuit determined that the United States did not offer evidence that the defendant touched the victim's genitalia under her clothing as opposed to through her clothing, and so the PSR should have calculated the sentencing guidelines range for sexual conduct rather than a sexual act.  See 359 F.3d at 1040-41.  Yazzie also repeats the PSR's enhancements without objecting.  See May 15, 2011 Letter at 3.

In the Second Addendum to the Presentence Report, disclosed July 11, 2011 ("Second Addendum"), the USPO responds to the objections that Yazzie submitted on May 12, 2011.[3]

---

[3] The Second Addendum states that Yazzie submitted objections to the Court on May 12, 2011, and that the USPO received a copy of the objections dated April 30, 2011.  See Second Addendum at 1.  The Court is unable to locate Yazzie's objections.  The Court described

Yazzie objects to the USPO's application of U.S.S.G. § 2A3.1(b)(2), because he contends that the victim had attained age thirteen; the USPO corrected the PSR to reflect that, at the time of the reported abuse in 2010, Jane Doe 1 was approximately fourteen years old and Jane Doe 2 was approximately eleven years old.  See Second Addendum at 1.  The USPO concludes, however, that the 4-level increase under § 2A3.1(b)(2) still applies, because Yazzie's conduct with Jane Doe 2 is relevant conduct.  See Second Addendum at 1.  Yazzie also objects that the PSR incorrectly assessed his criminal history points; based on the length of time he served for a prior conviction, he asserts that he has 1, not 2, criminal history points, which should result in a criminal history category of I.  See Second Addendum at 2.  The USPO agrees and corrects the PSR to reflect 1 criminal history point and a criminal history category of I.  See Second Addendum at 2.  The USPO notes, however, "this change in criminal history category does not change the guideline imprisonment range of 360 [months] to life."  Second Addendum at 2.  Yazzie objects to the 5-level increase under U.S.S.G. § 4B1.5(b)(1); the USPO says it based that adjustment "on the information obtained from the discovery material," and that "[t]he pattern of sexual conduct involved the abuse of [Jane Doe 1] over a two year period of time and the abuse of [Jane Doe 2] for several months."  Second Addendum at 2.  The USPO maintains that it correctly applied the 5-level increase under § 4B1.5(b)(1).  See Second Addendum at 2.  The USPO calculates that Yazzie's offense level is 42 and his criminal history category is I, resulting in a guideline imprisonment range of 360 months to life.  See Second Addendum at 5.

In the Sentencing Memo., Yazzie reiterates his argument that the 4-level increase pursuant to § 2A3.1(b)(2) should not apply; because Jane Doe 1 was 14 at the time, he argues that he should receive only a 2-level increase.  See Sentencing Memo. at 1-3.  He contests

Yazzie's factual objection from the May 15, 2011 Letter, but that letter does not include the objections that the Second Addendum describes.

characterizing any actions with Jane Doe 2 as relevant conduct; he argues that he did not plead to

any act involving Jane Doe 2 and denies any criminal conduct with her.  See Sentencing Memo.

at 2.

> For purposes of argument only, assuming the conduct did occur, in Yazzie's
> statement to the FBI, which he states he was forced to make, he did not believe
> that he was touching [Jane Doe 2].  Rather, he believed he was touching his wife
> and when he realized it was not his wife, he stopped.  He therefore did not have
> the intent to commit this crime.  18 U.S.C. § 2241 requires a person to act with
> intent to engage in a sexual act with a person who has not attained the age of 12
> years and to knowingly engage in a sexual act.  Yazzie lacked the requisite intent
> with regard to [Jane Doe 2].

Sentencing Memo. at 2-3.

Yazzie next argues that the USPO incorrectly applied a 4-level enhancement under

U.S.S.G. § 2A3.1(b)(1).  See Sentencing Memo. at 3.  Although the USPO purports to rely on

"§ 2241(a) 'force or threat' to justify the enhancement," Yazzie argues that the conduct the

USPO describes -- "that Yazzie forced JD1 onto the bed and sat on her while he tried to kiss her"

-- does not constitute a "sexual act" or "sexual contact" under 18 U.S.C. § 2246(2) and (3).

Sentencing Memo. at 3.  He also denies that he engaged in the conduct the USPO describes.  See

Sentencing Memo. at 3.

Although Yazzie "requested defense counsel to further object to the application of

§ 4B1.5(b)(1), Ms. Middlebrooks explains that, based on her review, the USPO correctly applied

this adjustment.  See Sentencing Memo. at 4-5.  Yazzie asserts that, if the Court sustains his

objections, it "would yield a total offense level of 188-235 months (which is also the exact

amount of time contemplated in the Rule 11(c)(1)(C) plea agreement)."  Sentencing Memo. at

12.[4]  Yazzie asks the Court to "honor the Rule 11(c)(1)(C) plea agreement and award the low-end guideline range proposed in that agreement of 15 years."  Sentencing Memo. at 12.

Yazzie requests that the Court vary to the low-end of the guideline range from the Plea Agreement.  See Sentencing Memo. at 5.  Under 18 U.S.C. § 3553(a)(1), the sentencing factor that considers "the nature and circumstances of the offense and the history and characteristics of the defendant," Yazzie points to his lack of guidance as a youth and his mental condition as reasons for the Court to vary down.  Sentencing Memo. at 5, 8.  He asserts that he "suffered from a lack of guidance in his childhood and youth," and that he had a "difficult childhood because both his parents were alcoholics."  Sentencing Memo. at 6.  He contends that, although he does not "recall any physical abuse," he recalls "that his parents were frequently absent from the home, sometimes for days at a time as a result of their drinking," and that he and "his younger siblings were forced to fend for themselves without the benefits of electricity or running water in the home."  Sentencing Memo. at 6.  During a psychological evaluation, Yazzie told Dr. William Foote that his "his mother had a serious drinking problem and that she drank while pregnant with him," and that he and his other siblings have had serious drinking problems.  Sentencing Memo. at 6-7.  Yazzie notes that it is "questionable" whether he "had any constructive role model in his life or guidance about right and wrong," and that he "turned to alcohol which was the only thing he saw demonstrated by others in his life."  Sentencing Memo. at 7.  Yazzie argues that, "[w]ithout a solid foundation outlining the parameters for socially acceptable behavior, an understanding of right or wrong in order to form a moral conscious, or guidance as to how a parental figure should behave with a minor, it is easy to imagine how this factor contributed to

---

[4]  According to the Court's calculations, this sentencing guideline range is based on an offense level of 36.  To reach this offense level, the Court would have to sustain Yazzie's objections to the enhancement under U.S.S.G. §§ 2A3.1(b)(1) and 2A3.1(b)(2), but would not sustain Yazzie's objection to the enhancement under U.S.S.G. § 4B1.5(b)(1).

Yazzie's conduct in this case." Sentencing Memo. at 7. He "requests the Court to consider his lack of guidance as a youth in varying from the guideline range to the low-end of the guideline range contemplated in his Rule 11(c)(1)(C) plea." Sentencing Memo. at 7 (citing United States v. Peterson, No. CR 10-1919 JB, 2013 WL 142478, at *8-*9 (D.N.M. Jan. 7, 2013)(Browning, J.)).

Yazzie contends that his mental condition is an additional basis to vary, because "Dr. Foote opines that Yazzie may have experienced some serious prenatal alcohol exposure that may have resulted in some sort of developmental problems," although he has never "been formally diagnosed." Sentencing Memo. at 8. Yazzie asserts that he was in special education in school, was a slow learner, dropped out of school in the ninth grade, and does not have a GED. See Sentencing Memo. at 8. Ms. Middlebrooks explains that, in her interactions with Yazzie, he is unable to "understand certain issues, meanwhile insisting and maintaining his correctness on the issue when explained to him otherwise," and that, at times, he has "expressed to defense counsel that he understands issues, only to write defense counsel and question defense counsel at length in later discussions about the same issues." Sentencing Memo. at 8. Yazzie argues that "he has a mental condition that should be considered by the Court in structuring the best sentence for him." Sentencing Memo. at 8-9.

Under 18 U.S.C. § 3553(a)(2), which requires the Court to consider the "need for the sentence imposed," Yazzie contends that he "appreciates the seriousness of the charge to which he pled," but that "a sentence of 292-365 months incarceration over-represents the punishment that Yazzie should receive for this conviction." Sentencing Memo. at 10. He argues that fifteen years or, alternatively, 188 months if the Court sustains his objections, "is adequate to provide punishment and deter Yazzie from further criminal conduct." Sentencing Memo. at 10.

Although he has argued that he did not penetrate Jane Doe 1 with his finger, he accepts "criminal conduct for inappropriate touching and actions demonstrated toward" Jane Doe 1, and asserts that he "has never maintained an outright innocence to the charges." Sentencing Memo. at 10-11. Yazzie argues that, because he "would benefit from some form of medical or psychological intervention," a "lengthy incarceration" would not help his treatment, and requests a variance to 188 months. Sentencing Memo. at 11.

The USPO addresses Yazzie's objections from the Sentencing Memo. in the Third Addendum to the Presentence Report, disclosed June 24, 2013 ("Third Addendum"). Regarding Yazzie's objection to the 4-level increase under U.S.S.G. § 2A3.1(b)(2), the USPO maintains its position in the Second Addendum, which applies the 4-level increase based on relevant conduct with Jane Doe 2, who was 11 years old. See Third Addendum at 1. The USPO also maintains that, although Yazzie denies the conduct that led the USPO to apply the 4-level increase under U.S.S.G. § 2A3.1(b)(1), it "obtained the information from the discovery pertaining to this case." Third Addendum at 2. The USPO reiterates its previous position regarding the 5-level increase under U.S.S.G. § 4B1.5(b)(1), based on Yazzie's pattern of activity over two years with Jane Doe 1 and over several months with Jane Doe 2. See Third Addendum at 2.

In the Defendant's Addendum to Amended Sentencing Memorandum in Support of Rule 11(c)(1)(C) and Objections to PSR, filed July 26, 2013 (Doc. 110)("Sentencing Memo. Addendum"), Yazzie again objects to the USPO's application of the 5-level upward adjustment under U.S.S.G. § 4B1.5(b)(1). Sentencing Memo. Addendum at 1. Yazzie argues that the prohibited sexual conduct must be a prior sex offense conviction; he starts with Application Note 4(A) to U.S.S.G. § 4B1.5(b), which defines "prohibited sexual conduct" as "any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B)." Sentencing Memo. Addendum at 2 (quoting

U.S.S.G. § 4B1.5(b) application note 4(A)).  That statute in turn defines the term "prior sex

offense conviction" as

> "a conviction for an offense  . . . (A) under this chapter, chapter 109A, chapter
> 110, or section 1591 . . . or; (b) under State law for an offense consisting of
> conduct that would have been an offense under a chapter referred to in paragraph
> (1) if the conduct had occurred within the special maritime and territorial
> jurisdiction of the United States . . . ."

Sentencing Memo. Addendum at 2 (quoting 18 U.S.C. § 2426(b)).  Yazzie argues that U.S.S.G.

§ 4B1.5(b) thus requires the prohibited sexual conduct to be a prior sex offense conviction, and,

because he does not have any prior convictions, he argues that the upward adjustment should not

be applied.  See Sentencing Memo. Addendum at 2-3.  The USPO responds, in the Fourth

Addendum to the Presentence Report, disclosed July 31, 2013 ("Fourth Addendum"), that

Application Note 4(B)(i) to U.S.S.G. § 4B1.5 and the 2011-2012 Federal Sentencing Guideline

Handbook indicates that the 5-level increase "does not require a prior conviction and the

'pattern' can be conduct in the present offense."  Fourth Addendum at 1.

In the Fifth Addendum to the Presentence Report, disclosed August 6, 2013 ("Fifth

Addendum"), the USPO revisited Yazzie's objection to the 4-level increase under U.S.S.G.

§ 2A3.1(b)(2), based on the age of the victims.  See Fifth Addendum at 1.  The USPO explains

that, because Yazzie was not charged and did not plead guilty to the conduct with Jane Doe 2,

that conduct is not relevant conduct in this case; instead, the USPO explains that U.S.S.G.

§ 2A3.1(b)(2)(B) applies, resulting in a 2-level increase.  See Fifth Addendum at 1.  The USPO

calculates that the offense level is 40 and the criminal history category is I, resulting in a

guideline imprisonment range of 292 to 365 months, but that, if the Court accepts the Plea

Agreement, the sentence is 180 to 228 months.  See Fifth Addendum at 3.

- 13 -

1.      **The Court's Memorandum Opinion and Order**.

Yazzie requested that the Court allow him to withdraw his guilty plea; the Court denied

his request in a Memorandum Opinion and Order, filed Feb. 6, 2014 (Doc. 130)("MOO").  In the

MOO, the Court considered whether Yazzie's counsel obtained a favorable plea.  To do this

calculation, the Court analyzed Yazzie's objections to the PSR so that it could compare the

sentencing guidelines range with the range to which Yazzie pled pursuant to the Plea Agreement.

The Court concluded that Yazzie's counsel obtained a favorable plea:

> As of the Fifth Addendum to the PSR, the USPO calculates that Yazzie's total offense level is 40.  See Fifth Addendum at 1.  This calculation is based on: (i) a base offense level of 30; (ii) a 4-level enhancement under U.S.S.G. § 2A3.1(b)(1) based on conduct that violates 18 U.S.C. § 2241(a); (iii) a 2-level enhancement under U.S.S.G. § 2A3.1(b)(2)(B), because the victim was between twelve and sixteen years old; (iv) a 2-level enhancement under U.S.S.G. § 2A3.1(b)(3), because the victim was in Yazzie's custody, care, or supervisory control; (v) a 4-level enhancement under U.S.S.G. § 4B1.5(b)(1) as a repeat and dangerous sex offender against minors; (vi) a 2-level reduction under U.S.S.G. § 3E1.1 for accepting responsibility; and (vii) a 1-level reduction based on an expected motion from the United States based on Yazzie's acceptance of responsibility.  See PSR ¶¶ 31-40, at 10-11; Fifth Addendum at 1.  This calculation results in a sentencing guidelines range of 292 to 365 months, which is well above the 180 to 228 months to which the parties agreed in the Plea Agreement.  See Plea Agreement ¶ 10(a), at 4.

> Yazzie objects to the USPO's enhancements under U.S.S.G. §§ 2A3.1(b)(1) and 4B1.5(b)(1).  If the Court sustains both of these objections, the total offense level would be 31, resulting in a guidelines range of 108 to 135 months, which is lower than Yazzie's Plea Agreement range.  This reduction would change the Court's view whether the Plea Agreement was a good deal for Yazzie under 18 U.S.C. § 2241(a), the statute to which he pled guilty.  Although the Court does not intend to rule definitively on the objections without giving the parties an opportunity to present their arguments to the Court at a sentencing hearing, the Court concludes that it is necessary to consider to some extent the merit of Yazzie's objections so that it can correctly estimate what the sentencing guidelines range would be for Yazzie without the Plea Agreement.

> Looking first to Yazzie's objection to the 4-level enhancement under U.S.S.G. § 2A3.1(b)(1), Yazzie argues that the conduct described in the PSR for this enhancement does not constitute a sexual act as required by 18 U.S.C. § 2241(a) and (b).

The defendant was charged with Aggravated Sexual Abuse by force or threat. [Jane Doe 1] described being alone with Yazzie on numerous occasions when he would force her onto the bed then sit on her abdomen so she was unable to move. He would then kiss her, forcing her to kick, and hit him until he let her go. [Jane Doe 1] also reported that the defendant threatened to hurt their mother if she or her sister disclosed the abuse.

PSR ¶ 31, at 10. 18 U.S.C. § 2246 provides four alternative definitions for "sexual act":

**(A)** contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however, slight;

**(B)** contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

**(C)** the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or

**(D)** the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

18 U.S.C. § 2246(2). Yazzie is correct that the additional conduct that the PSR describes does not constitute a sexual act as defined in 18 U.S.C. § 2246, but he cannot avoid the 4-level enhancement, because the crime to which he pled guilty is 18 U.S.C. § 2241(a), meaning that "the offense involved conduct described in 18 U.S.C. § 2241(a)." U.S.S.G. § 2A3.1(b)(1). Ms. Middlebrooks explained at the Sept. 13, 2013 hearing that, although Yazzie pled guilty to the facts in the Plea Agreement, he now denies the factual basis, asserting instead that at most, he committed sexual contact and not a sexual act. At this point, with the Plea Agreement still standing, Yazzie is subject to the 4-level enhancement under U.S.S.G. § 2A3.1(b)(1); if the Court permits him to withdraw his guilty plea and he is convicted at trial for the same offense, he would likewise be subject to the 4-level enhancement.

Yazzie also objects to the 5-level enhancement under U.S.S.G. § 4B1.5(b)(1), which applies when the "defendant engaged in a pattern of activity involving prohibited sexual conduct." U.S.S.G. § 4B1.5(b). He argues that the prohibited sexual conduct refers to a prior sex offense conviction, and, because he

does not have any prior sex offense convictions, he contends the 5-level enhancement should not apply.  The Court agrees with the USPO's response to this argument in the Fourth Addendum -- the application notes to U.S.S.G. § 4B1.5(b)(1) explain that "[a]n occasion of prohibited sexual conduct may be considered for purposes of subsection (b) without regard to whether the occasion (I) occurred during the course of the instant offense; or (II) resulted in a conviction for the conduct that occurred on that occasion."  U.S.S.G. § 4B1.5 application note 4(b)(ii).  The Federal Sentencing Guidelines Handbook confirms that U.S.S.G. § 4B1.5(b) does not require prior convictions and thus "the 'pattern of activity' can include uncharged sexual assaults."  Roger W. Haines, Jr., Frank O. Bowman, III, & Jennifer C. Woll, Federal Sentencing Guidelines Handbook 2009-2010 Edition §4B1.5 Authors' Discussion, at 1402.  The Court tentatively concludes that the 5-level increase under U.S.S.G. § 4B1.5(b)(1) applies.  Because the Court does not believe, or does not have enough information to predict with any precision, that Yazzie's objections will be sustained, Yazzie will, on the present record, remain -- if he continues in his plea or is convicted at trial on the charge to which he pled -- at an offense level of 40 and a criminal history category I, resulting in a range of 292 to 365 months.  On that premise, the Plea Agreement results in a more favorable sentencing range than to what Yazzie would be subject for the same offense without the Plea Agreement.  Even if the Court applies the 4-level enhancement under U.S.S.G. § 2A3.1(b)(1), but not the 5-level enhancement under U.S.S.G. § 4B1.5(b)(1), the offense level would be 35 and criminal history category I, resulting in a guideline range of 168 to 210 months, not radically different than the Plea Agreement's range of 180 months to 228 months.  Although Yazzie argues that he should be convicted for sexual contact and not a sexual act, the Court is concerned that, if it permits him to withdraw his guilty plea and Yazzie proceeds to trial, he may be convicted for the same offense to which he pled, 18 U.S.C. § 2241(a), because the United States would likely be able to use the statements Yazzie made in the Plea Agreement and at the plea colloquy.  See United States v. Jim, 839 F. Supp. 2d at 1158 (denying the defendant's motion in limine to exclude statements the defendant made in his plea agreement and during the plea colloquy).

Yazzie's problem with Mr. Loonam is not only that Mr. Loonam secured an unfavorable plea agreement based on the offense to which he pled guilty, but that he should not have pled guilty to that offense at all.  Yazzie argues now that he is guilty of sexual contact and not of a sexual act, and that Mr. Loonam should have obtained a plea deal under 18 U.S.C. § 2244(a)(1), which would have capped his sentence at 10 years.  Although Yazzie asserts that he committed sexual contact, because he disputes that he penetrated Jane Doe 1 and that he touched her under her clothes, Yazzie did not dispute that he committed a sexual act at the plea hearing when he discussed the facts to which he was pleading guilty.  He rather contested that he used force and so demonstrated that he was not afraid to correct the record; yet he remained silent regarding the allegation that he penetrated Jane Doe 1.  Further, the United States initially charged Yazzie under 18 U.S.C. § 2241(c), which carries a mandatory minimum sentence of 30 years in

prison.  See 18 U.S.C. § 2241(c).  The Court cannot say that Mr. Loonam's performance in representing Yazzie was deficient when he helped Yazzie avoid a much harsher sentence than what the United States initially charged, especially when Yazzie did not make clear until after he pled guilty that he disputes committing a sexual act.

As to the first complaint of Mr. Loonam's assistance, even if Yazzie is correct that he should not have pled guilty to sexual abuse, he knowingly and voluntarily pled to that offense, and he had the opportunity to challenge the facts of the charge at the plea hearing.  At the plea hearing, he challenged the characterization that he used force; he was also free to challenge whether he penetrated Jane Doe 1, yet he did not challenge that fact at the plea colloquy.  He waited until the May 15, 2011 Letter to assert that he did not penetrate Jane Doe 1.  Yazzie cannot show that, even if Mr. Loonam were somehow ineffective in obtaining the plea deal, that such ineffectiveness prejudiced Yazzie, because he was aware of the charge and pled to it anyway.

MOO at 97-101.

## 2.    The Sentencing Hearing.

The Court held a hearing on March 21, 2014.  See Transcript of Hearing, taken March 21, 2014 ("Tr.").[5]  Yazzie asserted that the victims wanted to attend the sentencing, but that they did not have enough time and notice to come.[6]  See Tr. at 14:21-24 (Yazzie).  The United States said that it was not aware that the victims were interested in attending.  See Tr. at 15:7-14 (Wishard).  Ms. Middlebrooks explained that she gave Yazzie's wife notice of the hearing after she received notice.  See Tr. at 15:20-25 (Middlebrooks).  The Court said that it was unusual for the defendant to want the victims to attend the sentencing, that waiting to impose the sentence would delay Yazzie's appeal, and that waiting would also mean having to find Yazzie a new lawyer, because the Court was going to allow Ms. Middlebrooks to withdraw after sentencing.  See Tr. at 17:19-

---

[5] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[6] The victims are attending school until May, one in California and the other in Oklahoma.  See Tr. at 14:22-23 (Yazzie); id. at 16:18 (Yazzie).

14 (Court).  Yazzie said that he wanted to delay the sentencing, because "my family wanted to be here, but they didn't have enough notice."  Tr. at 18:15-17(Yazzie).  The Court asked Yazzie to speak with Ms. Middlebrooks, because if the victims wanted only to attend, then it would not serve any purpose to delay, and allowing the victims to testify could be damaging to his case.  See Tr. at 18:18-19:2 (Court).  After discussing the issue, Ms. Middlebrooks said she could "present as way of a proffer what [Yazzie] is saying the girls would recommend for his sentence to . . . be, and that's what he is saying is [why] we would want them here."  Tr. at 19:7-16 (Middlebrooks).  The Court said that it would get through as much of the hearing as it could before deciding whether to delay sentencing to hear from the victims.  See Tr. at 19:17-22 (Court).

The Court asked Yazzie if he had reviewed the PSR and the five addenda; he said that he had, and Ms. Middlebrooks said that she had reviewed the documents with Yazzie, as well.  See Tr., at 23:11-24 (Court, Yazzie, Middlebrooks).  The Court asked Yazzie if he had any objections other than what he had argued in the briefings; Yazzie said that, when he pled guilty, they had calculated his criminal history category as II instead of I, and so he argued that he should have stipulated to fourteen to seventeen years, rather than fifteen to eighteen years.  See Tr. at 24:12-20 (Court, Yazzie).  The Court explained that the Second Addendum to the PSR changed the criminal history category to I, and so "everybody is in agreement" that Yazzie is at criminal history category I, and that his objection had been resolved in his favor.  Tr. at 25:8-26:25 (Court, Middlebrooks, Yazzie).

The Court explained that, while it analyzed Yazzie's objections in the MOO, it was careful not to foreclose Yazzie from making additional arguments at the hearing, and so it would briefly explain its position regarding the objections and allow the parties to make additional

arguments.   See Tr. at 27:13-16 (Court).   Regarding Yazzie's objection to the 4-level enhancement under U.S.S.G. § 2A3.1(b)(1) for conduct that violates 18 U.S.C. § 2241(a), the Court said that it understands Yazzie's argument that the offense conduct described in the PSR -- that Yazzie would force Jane Doe 1 onto the bed, sit on her abdomen, and kiss her -- does not constitute a sexual act as defined in 18 U.S.C. § 2241(a), but said that it was inclined to overrule the objection, because Yazzie pled guilty to 18 U.S.C. § 2241(a), and thus, the enhancement would automatically apply.   See Tr. at 27:6-12 (Court).   Ms. Middlebrooks explained that she objected to the 4-level enhancement, because Yazzie asserted that he did not commit a sexual act, but sexual conduct, which would not be subject to the enhancement, but she acknowledged that the Plea Agreement included language that triggered the 4-level enhancement.   See Tr. at 27:22-28:15 (Middlebrooks).   Neither Yazzie nor the United States said anything regarding that objection, and the Court overruled the objection.   See Tr. at 28:16-29:1 (Court, Yazzie, Wishard).

The Court said that, because Yazzie did not object, it would apply the 2-level enhancement under U.S.S.G. § 2A3.1(b)(2)(B) and the 2-level enhancement under U.S.S.G. § 2A3.1(b)(3).   See Tr. at 29:2-30:9 (Court, Middlebrooks, Yazzie, Wishard).   Regarding the 5-level enhancement under U.S.S.G.§ 4B1.5(b)(1), for engaging in a pattern of activity involving prohibited sexual conduct against minors, the Court acknowledged Yazzie's argument that the prohibited sexual conduct refers to prior sex offenses, and that, because he was not previously convicted, the enhancement should not apply, but said that it was inclined to overrule the objection, because the pattern of activity can include uncharged sexual assaults.   See Tr. at 30:10-25 (Court).   Ms. Middlebrooks explained that the provision is "somewhat confusing" in that it seems to refer to a prior conviction as a prior sex offense, but she said that she understood

the Court's reasoning as to why the 5-level enhancement would apply.   Tr. at 31:2-14 (Middlebrooks).   She said that, when she spoke to Yazzie about withdrawing the objection, he understood that, based on a case he had read, the pattern of activity had to be "documented by photographs," but that she did not think the case law or guidelines required such evidence.   Tr. at 31:14-22 (Middlebrooks).   Yazzie stated his understanding of the enhancement:

> That pattern activity, I've been studying it for a while.   It works two ways.   You don't have to have a prior offense if your crime was a prohibited sexual conduct.   And my crime wasn't a prohibited sexual conduct. . . .   What they mean by a prohibited sexual conduct is like if you have child pornography, and you take a pattern of your activity, if you record yourself, whatever, and then you don't need a prior offense because you have already have a pattern of your activity.   That's the way I understand it.

Tr. at 32:7-19 (Yazzie).   Ms. Middlebrooks explained that Yazzie was referencing U.S.S.G. § 4B1.5 application note 4, which defines "prohibited sexual conduct" as one of the following: "(i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography; or (iii) trafficking in child pornography only if, prior to the commission of the instant offense of conviction, the defendant sustained a felony conviction for that trafficking in child pornography."   U.S.S.G. § 4B1.5 cmt. n.4.   See Tr. at 32:22-33:7 (Middlebrooks).   She said that everyone agrees that the offense does not involve child pornography, which leaves the prohibited sexual conduct under 18 U.S.C. § 2426.   See Tr. at 33:4-10 (Middlebrooks).   The Court said that it did not think that the enhancement requires prior convictions, and that the "pattern of activity can include uncharged sexual activities, assaults," and "unphotographed assaults."   Tr. at 33:14-23 (Court).

The United States moved for the third level for acceptance of responsibility.   See Tr. at 33:25-34:7 (Court, Wishard, Middlebrooks).   After ruling on the objections, the Court calculated the offense level at 40, criminal history category of I, resulting in a sentencing range of 292 to

365 months.  <u>See</u> Tr. at 34:10-12 (Court).  Yazzie did not have any other objections.  <u>See</u> Tr. at 34:16-22 (Court, Yazzie, Middlebrooks).

     Ms. Middlebrooks spoke on behalf of Yazzie to request a variance to the lower end of the sentence to which he pled under the Plea Agreement.  <u>See</u> Tr. at 35:1-13 (Middlebrooks).  She reiterated arguments from the Sentencing Memo. regarding Yazzie's lack of guidance as a youth, explaining that Yazzie "loves his parents," but "his parents were not available for him in terms of raising him, and suffered unfortunately from the condition of alcoholism."  Tr. at 35:14-36:4 (Middlebrooks).  She explained that Yazzie himself turned to alcohol, did not have "any good role model or guidance for him in terms of his upbringing and showing him what is proper behavior," and that, while his actions are "not excusable," it is "easy to see how we end up in a situation like this when an individual doesn't have any constructive role model or guidelines in his life in order to understand how a parent . . . figure should behave with a minor, and what is appropriate and what is not appropriate."  Tr. at 36:5-37:8 (Middlebrooks).  Ms. Middlebrooks also asked the Court to "consider a mental condition as a basis for a downward variance."  Tr. at 37:9-10 (Middlebrooks).  She explained that, while Yazzie does not have a formal diagnosis of a mental disability, Dr. Foote addressed several factors that might be contributing to Yazzie's developmental problems.  <u>See</u> Tr. at 37:9-20 (Middlebrooks).  Ms. Middlebrooks acknowledged that Yazzie has "demonstrated that he's quite adept at reading case law and arguing various motions," but said that it has been difficult at times for him to understand "what it is that we're doing or what we're talking about."  Tr. at 38:7-24 (Middlebrooks).

     The Court gave Yazzie an opportunity to speak on his own behalf.  <u>See</u> Tr. at 39:6-10 (Court).  Yazzie stated:

> Probably just have to say one of the victims forgave me, and one of them forgave me for lying about me.  And I just want to get back home soon. . . .  And my son

and my wife is here too.  Margaret Harjo.  I don't know if she wants to say anything on behalf of her girls.

Tr. at 39:11-18 (Yazzie).  The Court said that Yazzie could ask people to speak on his behalf. See Tr. at 39:22-24 (Court).  First, Kaylin Charlie, Yazzie's niece, asked the Court to give Yazzie probation and allow him to return home; she said that she recently lost her mother and that her grandmother also needs Yazzie home, "because my grandma is going through medical things."  Tr. at 40:8-21 (Charlie).  Next, Harjo said that it has been difficult for her to raise six children without Yazzie available to help, that their two sons have developmental delay and that it would "really help . . . if their dad could come home and help."  Tr. at 41:24-42:12 (Harjo). She explained that her daughters, Jane Doe 1 and Jane Doe 2, would have come, but that they did not receive the notice of the hearing with enough time for them to attend, although they could attend if the Court delayed the sentencing.  See Tr. at 41:13-20 (Harjo); id. at 42:18-43:2 (Harjo, Court).  Valencia Yazzie, another of Yazzie's nieces, stated that she did not think Yazzie "would do anything like this," and asked the Court to give Yazzie a low sentence or probation, because "I just want to see him home."  Tr. at 43:13-25 (V. Yazzie).

The United States acknowledged that "it's regrettable, but inevitable that there will be consequences to a family based on a defendant's behavior."  Tr. at 44:11-14 (Wishard).  The United States noted that the "correctly calculated guideline range in this cases is 292 to 365 months," and that a sentence at the high end of the Plea Agreement range -- 19 years, or 228 months -- would represent a 54 month downward variance.  Tr. at 44:14-18 (Wishard).  The United States asked the Court to sentence Yazzie to 228 months and a lifetime of supervised release.  See Tr. at 44:18-20 (Wishard).

The Court asked Ms. Middlebrooks about what to do with Yazzie's request to have the victims present; she responded that Yazzie wants the victims present to describe what happened

- 22 -

and to ask for Yazzie to be released, probably on probation or on time-served.  See Tr. at 44:21-45:10 (Court, Middlebrooks).  Ms. Middlebrooks said that she did not know what the victims would say, because "[a]n investigator tried to talk to them, and they were evasive with the investigator for the defendant," and while the victims had sent two letters "that recant to some extent the allegations," the letters are "very vague" and do not "outright recant" all of the allegations.  Tr. at 45:16-25 (Middlebrooks).  She said that, as a defense attorney, she would be "a little nervous on my end" postponing the sentencing, because she does not know if the victims' testimony would advance or hurt Yazzie's arguments for a low sentence.  Tr. at 46:1-7 (Middlebrooks).  Ms. Middlebrooks said that the victims "would have a right to be at the sentencing and to be able to speak their position on sentencing," but she had "not heard that they want to be here or that they are requesting to be here."  Tr. at 46:22-47:6 (Middlebrooks).  The United States said that "the victims' rights laws are very specific that they do not create any affirmative defenses for the defendant," and argued that delaying the sentencing "would not be in the interest of justice."  Tr. at 47:14-48:3 (Wishard).  The United States and Ms. Middlebrooks said that they were not aware of a reason from a legal standpoint for delaying the sentencing, because if the victims wanted to attend, that is their right to assert, and not a right that Yazzie can assert.  See Tr. at 48:4-49:14 (Wishard, Court, Middlebrooks).  The Court said that it understood that, if the victims wanted to attend the sentencing, they could have indicated that desire, but that Yazzie cannot raise the issue on their behalf.  See Tr. at 49:15-19 (Court).  The Court said it had a "pretty good sense from the letters and from the representations" what the victims would say, if they were present.  Tr. at 49:20-24 (Court).

Probation asked the Court to consider "imposing a special condition that [Yazzie] have no contact with children under the age of 18, since the victims in the case were minors."  Tr. at

60:13-17 (Probation Officer).  Ms. Middlebrooks argued that Yazzie and the victims will be older when Yazzie is released from prison, and that imposing a "blanket" condition that would not permit him to "be around any nieces or nephews or children . . . is a little harsh at this point." Tr. at 60:20-61:6 (Middlebrooks).  The Court said that it was reluctant to impose a condition that was not previously listed as a special condition and that the Court can consider imposing the special condition after Yazzie is released on supervised release.  See Tr. at 61:7-13 (Court).

## LAW REGARDING VARIANCES FROM THE SENTENCING GUIDELINES

After United States v. Booker, 543 U.S. 220 (2005), the sentencing guideline ranges are now advisory[10] and are one of several factors set out in 18 U.S.C. § 3553(a).  Although appellate courts are allowed to assume that within-guidelines sentences are reasonable, subject to rebuttal, see Gall v. United States, 552 U.S. at 50-51, the Supreme Court of the United States has made it clear that no presumption of reasonableness attaches at the district court level to the sentence the

---

[10]Attorneys and courts often say that the "guidelines" are advisory, but it appears more appropriate to say that the guideline ranges are advisory.  Gall v. United States, 522 U.S. 34, 46 (1997)("As a result of our decision [in United States v. Booker], the Guidelines are now advisory[.]"); United States v. Leroy, 298 F. App'x 711, 712 (10th Cir. 2008)("[T]he Guidelines are advisory, not mandatory."); United States v. Sells, 541 F.3d 1227, 1237 (10th Cir. 2008)("[T]he sentence ultimately imposed by the district court was based on a correctly calculated Guidelines range, a stated consideration of the § 3553(a) factors, and an understanding that the Guidelines are advisory.").  The Court must consider the guidelines, see Gall v. United States, 522 U.S. at 46 ("It is . . . clear that a district judge must give serious consideration to the extent of any departure from the Guidelines[.]"), and must accurately calculate the guideline range, see 522 U.S. at 49 ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.").  The Court is not mandated, however, to apply a sentence within the calculated guideline range.  See United States v. Sierra-Castillo, 405 F.3d 932, 936 n.2 (10th Cir. 2005)("[D]istrict courts post-Booker have discretion to assign sentences outside of the Guidelines-authorized range[.]").  Accord United States v. Chavez-Rodarte, No. CR 0-8-2499, 2010 WL 3075285, at *2-*3 (D.N.M. July 16, 2010)(Browning, J.).

Guidelines suggest, see Gall v. United States, 552 U.S. at 50 (explaining that a sentencing judge "may not presume that the Guidelines range is reasonable"); Rita v. United States, 551 U.S. 338, 351 (2007)("In determining the merits of [the parties'] arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply.").

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

18 U.S.C. § 3553(a)(2)(A)-(D).   Section 3553(a) also directs sentencing courts to consider: (i) the nature of the offense and the defendant's character; (ii) the available sentences; (iii) the sentencing guidelines and policy statements that the Sentencing Commission has promulgated; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims. See 18 U.S.C. § 3553(a)(1), (3)-(7).

In Kimbrough v. United States, 552 U.S. 85 (2007), the Supreme Court stated that, in the ordinary case, "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'"  552 U.S. at 89 (quoting Rita v. United States, 551 U.S. 338, 350 (2007)).  The Supreme Court recognized, however, that the sentencing judge is "in a superior position to find facts and judge their import under § 3553(a) in each particular case."  552 U.S. at 89.  Applying § 3553(a)'s factors, the Court has

found that the case of an illegal immigrant who re-enters the United States so as to be able to

provide for his two children and two siblings did not materially differentiated from other re-entry

cases, and thus, no variance from the guidelines sentence was warranted.  See United States v.

Alemendares-Soto, No. CR 10-1922 JB, 2010 WL 5476767, at *12 (D.N.M. Dec. 14,

2010)(Browning, J.).  On the other hand, in United States v. Jager, although Jager's military

service was not present to an unusual degree and thus did not warrant a departure, the Court

found that a variance was appropriate, because Jager's military service was "superior and

uniformly outstanding," as Jager appeared to have been "trustworthy[] and dedicated, and he

served with distinction."  2011 WL 831279, at *14.

## ANALYSIS

The Court carefully considered Yazzie's objections to the PSR and the addenda, but

overrules his objections for the reasons it stated in the MOO.  The Court adopts the PSR and the

addenda as its own.  Based on the sentencing guidelines as of the Fifth Addendum, Yazzie's

offense level is 40, his criminal history category is I, resulting in a sentencing range of 292 to

365 months.  Yazzie pled guilty pursuant to the Plea Agreement, which stipulated to a sentence

between 180 and 228 months.  The Court accepts the Plea Agreement and will sentence Yazzie

near the low end of the range, at 188 months.

## I.      THE COURT WILL NOT CONTINUE THE SENTENCING.

Rule 32(b)(1) of the Federal Rules of Criminal Procedure requires the Court to "impose

sentence without unnecessary delay."  Fed. R. Crim. P. 32(b)(1).  Rule 32 does not otherwise

discuss what "unnecessary delay" means, but states that the "court may, for good cause, change

any time limits prescribed in this rule."  Fed. R. Crim. P. 32(b)(2).  The Honorable Jack Bertrand

Weinstein, United States Senior District Judge for the United States District Court for the

Eastern District of New York, reviewed the history of rule 32, and concluded that the "[d]elay of sentencing at the request of the defendant is not explicitly permitted under the Federal Rules of Criminal Procedure.   The text and history of Federal Rule 32 require that courts exercise discretion in deciding when sentencing should occur."   United States v. Flowers, 983 F. Supp. 159, 167 (E.D.N.Y. 1997).  Although crime victims have the "right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding," 18 U.S.C. § 3771(a)(4), it is only the victim, the victim's lawful representative, or an attorney for the government that may assert that right, not the defendant, see 18 U.S.C. § 3771(d)(1) ("The crime victim or the crime victim's lawful representative, and the attorney for the Government may assert the rights described in subsection (a).  A person accused of the crime may not obtain any form of relief under this chapter.")

If the victims, on their own, through representation, or through the United States' counsel, asked the Court to delay Yazzie's sentencing so that they could attend and testify, the Court would likely delay the sentencing, to "ensure that the crime victim[s] [are] afforded" their rights.  18 U.S.C. § 3771(b)(1).  The victims did not assert their rights, however, and the United States represented to the Court that it notified the victims about Yazzie's sentencing but did not hear from the victims that they wanted to attend.  Instead, Yazzie has requested that the Court delay sentencing to allow the victims to attend, but Yazzie does not have any rights that he may enforce through 18 U.S.C. § 3771.  The Court has discretion to decide whether to continue the sentencing to allow the victims to attend, because the request has come from Yazzie rather than the victims.  The Court will not continue the sentencing hearing, because it does not find that the victims' presence is necessary for Yazzie to receive a fair sentence.

It is odd for a defendant to be insisting that the victims of his crime be present for his sentencing.  The Court is concerned that something nefarious may be afoot.  It is obvious that the girls have grown up and moved on with their lives.  It is also fairly obvious that the family supports Yazzie, and does not think he did anything wrong or minimizes his crime.  The family appears to blame the girls for the predicament.  The Court is not interested in delaying the sentencing so that Yazzie and his family can put more pressure on these girls to change their stories.  While the Court would normally be liberal in granting continuances so that a defendant can present witnesses at his or her sentencing, the Court is concerned that to do so here would not be in the interest of justice.  At a minimum, this attempt to delay the sentencing seems to be another attempt by Yazzie to avoid the inevitable.  The Court has expended a tremendous amount of effort on his case.  The Court cannot afford to spend more time on his motions to withdraw from his Plea Agreement.  It is time to get a final judgment in place so that the Tenth Circuit can review what the Court has done.

## II.    <u>THE COURT WILL OVERRULE YAZZIE'S SENTENCING OBJECTIONS.</u>

The Court has carefully considered Yazzie's objections to the addenda, but overrules his objections for the reasons it stated in the MOO.  While the Court avoided ruling definitively on these objections so that Yazzie could argue them more fully at the time of sentencing, he offered no new arguments on each at the sentencing that changed the Court's analysis of the sentencing guideline range.  The Court overrules Yazzie's objection to the 4-level enhancement under U.S.S.G. § 2A3.1(b)(1), for an offense that involves conduct that violates 18 U.S.C. § 2241(a), because he pled guilty to 18 U.S.C. § 2241(a).  The Court overrules Yazzie's objection to the 5-level enhancement under U.S.S.G. § 4B1.5(b)(1), for a repeat and dangerous sex offender against minors where the defendant engaged in a pattern of activity involving prohibited sexual conduct,

- 28 -

because Yazzie engaged in prohibited sexual conduct.  Although Yazzie was not convicted for the other instances of prohibited sexual conduct, § 4B1.5(b)(1) does not require prior convictions, and the pattern of activity can include uncharged sexual assaults.  Further, § 4B1.5(b)(1) does not require photographs documenting the conduct.  Because the Court overrules Yazzie's objections, the Court adopts the PSR and five addenda as its own.[7]  Based on the sentencing guidelines as of the Fifth Addendum, Yazzie's offense level is 40 and his criminal history category is I, resulting in a sentencing range of 292 to 365 months.

## III.   THE COURT WILL GRANT YAZZIE'S REQUEST FOR A VARIANCE, BUT NOT AS MUCH AS YAZZIE WANTS.

Although the sentencing range to which Yazzie agreed is lower than his current range under the sentencing guidelines, the Court agrees that the range to which the parties stipulated in the Plea Agreement is an appropriate range.  As reflected in the Court's MOO on his motions to withdraw, there are departure issues, the witnesses are not likely great witnesses at this point, and the proposed range benefits Yazzie and secures a conviction.  The issue, then, is what sentence is appropriate between 180 and 228 months, because the Plea Agreement range is below the advisory guidelines range of 292 to 365 months, which results from an offense level of 40 and a criminal history category I.  The Court starts with an offense level of 40.  Eleven factors put downward pressure on Yazzie's sentence: (i) Yazzie's lack of guidance as a youth -- alcoholism was rampant in his family, and his parents did not give him a moral compass; (ii) his own struggles with alcoholism; (iii) his mental condition; (iv) he maintains some degree of innocence, along with the victims' letters that indicate the victims' favorable view toward Yazzie; (v) the

---

[7] The Court adopts the Fifth Addendum as its own, with one change: the Fifth Addendum states that "the report will be amended to reflect the correct base offense level of 40," Fifth Addendum at 1, but the Court will delete the word "base," because the base offense level is 30, while the total offense level is 40.

difficulty to Yazzie's family, including financial pressure, that Yazzie will not be available to help raise the children, and the disruption to their family; (vi) the difficulty to Yazzie; (vii) any sentence within the range would promote respect for the law; (viii) any sentence within the agreed-upon range justly punishes Yazzie; (ix) any sentence within the agreed-upon range would adequately deter similar acts at a specific level and a general level; (x) any sentence within the agreed-upon range will protect the public, because Yazzie will be incarcerated for a substantial amount of time and he will not likely be a danger outside of his family; and (xi) there are opportunities and conditions outside of incarceration -- on supervised release -- to help Yazzie, including education and training.  See Tr. at 51:22-54:6 (Court).  Seven factors put upward pressure on the sentence: (i) there have to be consequences for the very serious offense; (ii) the sentence must promote respect for the law; (iii) the sentence must justly punish Yazzie; (iv) the sentence must deter Yazzie; (v) the sentence must protect the public; (vi) the sentence will substantially vary from the sentencing guidelines range based on the sentencing range in the Plea Agreement; and (vii) other people who commit the same offense may receive higher sentences than what Yazzie will receive.  See Tr. at 54:6-22 (Court).

The Court will vary the equivalent of four offense levels, placing Yazzie at offense level 36, with a sentencing range of 188 to 235 months.  The Court will sentence Yazzie at the low-end of this range.  The Court's task is not to come up with a reasonable sentence, but rather to come up with a sentence that accurately reflects the factors set forth in 18 U.S.C. § 3553(a).  See United States v. Conlan, 500 F.3d 1167, 1169 (10th Cir. 2007)("[A] district court's job is not to impose a reasonable sentence.  Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." (citation omitted)).  Nonetheless, a sentence of 188 months is not only a reasonable sentence and

a more reasonable sentence than the guidelines sentence, but it also reflects better the factors set forth in 18 U.S.C. § 3553(a) than a guidelines sentence.  This sentence is sufficient without being greater than necessary to comply with the purposes of punishment set forth in the Sentencing Reform Act of 1984, Pub. L. No. 98-473, 98 Stat. 1987 (codified as amended in scattered sections of 18 U.S.C.).

Yazzie is committed to the custody of the Bureau of Prisons for a term of 188 months. After completing his term of imprisonment, he will be placed on supervised release for a term of eight years.  Yazzie must comply with the standard conditions of supervised release, including the standard sex offender conditions that the District of New Mexico adopted on November 17, 2011.  Yazzie must also comply with the following mandatory conditions: Yazzie shall not possess a firearm, ammunition, destructive device or any dangerous weapon.  Yazzie shall cooperate in the collection of DNA, as directed by statute.  Yazzie shall comply with the requirements of the Sex Offender Registration and Notification Act, 42 U.S.C. § 6901, as directed by the probation officer, the Bureau of Prisons, or any state or tribal sex offender registration agency, in which he resides, works, is a student, or was convicted of the qualifying offense.  The following special conditions will also be imposed: Yazzie must participate in and successfully complete an outpatient substance abuse treatment program approved by the probation officer, which may include testing.  Yazzie is prohibited from obstructing or attempting to obstruct or tamper in any fashion with the collection of any substance abuse testing device or procedure.  Yazzie may be required to pay a portion of the cost of treatment or drug testing to be determined by the probation office.  Yazzie must refrain from the use and possession of alcohol and other forms of intoxicants, because of his history with alcohol abuse. Yazzie must participate in and successfully complete an outpatient mental health treatment

program approved by the probation officer, because of his mental conditions, which may have been caused by his alcohol abuse, fetal alcohol syndrome, or learning disabilities.  He may be required to pay a portion of the cost of this treatment, to be determined by the probation officer.

Because of the offense to which Yazzie pled guilty, the Court imposes the following special conditions.  Immediately upon Yazzie's commencement of supervision, or as soon as possible thereafter, he shall undergo a risk assessment and/or psychosexual evaluation and begin participating in sex offender treatment consistent with the recommendations of the assessment and/or evaluation.  Furthermore, Yazzie shall submit to clinical polygraph testing and any other sex offender testing, as directed by the probation officer.  Yazzie may be required to pay a portion of the cost of testing or treatment as determined by the probation officer.  Yazzie shall be prohibited from viewing or possessing any material including photographs, images, books, writings, drawings, videos, or video games depicting and/or describing sexually explicit conduct or child pornography, as defined in 18 U.S.C. § 2256.  Yazzie is restricted from engaging in an occupation where he has access to children without prior approval of the probation officer.  Yazzie must not loiter within 100 feet of school yards, parks, playgrounds, arcades, or other places used primarily by children under the age of eighteen.  Yazzie may not volunteer for any activities in which he supervises children or adults with mental or physical disabilities.

The Mandatory Victim Restitution Act of 1996 applies in this case.  At this time the Navajo Nation Division of Social Services has not submitted a claim; therefore, no monetary restitution is due to any party.  Based on Yazzie's lack of financial resources, the Court will not impose a fine.  Yazzie will pay a special assessment of $100.00, which is due immediately.

**IT IS ORDERED** that Defendant Willis Yazzie's requests set forth in the Defendant's Amended Sentencing Memorandum in Support of Rule 11(c)(1)(C) and Objections to PSR, filed

June 19, 2013 (Doc. 107), are granted in part and denied in part.  The Court overrules Yazzie's objections to the Presentence Investigative Report, disclosed April 27, 2011.  The Court will grant the request for a variance.  Yazzie is committed to the custody of the Bureau of Prisons for a term of 188 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Kenneth J. Gonzales
  United States Attorney
Jacob Wishard
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

*Attorneys for the Plaintiff*

Kimberly A. Middlebrooks
Albuquerque, New Mexico

*Attorney for the Defendant*